### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**1-226**

| | |
|---|---|
| *Plaintiff* | |
| JOHN FALAT, JR.; MICHAEL RUSSO AND DEBORA TROUT | **Civil Action No. 2:12-cv-06804 (FSH/MAH)** |
| vs. | |
| *Defendants* | |
| THE COUNTY OF HUNTERDON; THE OFFICE OF THE HUNTERDON COUNTY PROSECUTOR; J. PATRICK BARNES; GEORGE MELICK; WILLIAM MENNEN; RONALD SWOREN; MATTHEW HOLT; ERIK PETERSON; ROBERT WALTON; GAETANO DESAPIO; KENNETH ROWE; EDWARD DEFILLIPIS; CYNTHIA YARD; BENNET BARLYN; WILLIAM MCGOVERN; DONNA SIMON; et als. | Hon. Faith S. Hochberg, U.S.D.J.<br><br>**Motion Date: June 16, 2014** |

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS THE COUNTY OF HUNTERDON, GEORGE MELICK, WILLIAM MENNEN, RONALD SWOREN, MATTHEW HOLT, ERIK PETERSON, ROBERT WALTON AND CYNTHIA YARD IN SUPPORT OF CROSS-MOTION TO ENFORCE LIMITED PORTIONS OF SUBPOEANAS AND TO COMPEL DISCOVERY AND IN OPPOSITION TO MOTION TO QUASH SUBPOENAS**

> **THOMAS B. HANRAHAN & ASSOCIATES, LLC**
> 80 Grand Avenue – Suite No. 2
> River Edge, New Jersey 07661
> (201) 525-1011
> nmilewski@tbhlaw.com
> *Attorneys for Defendants the County of Hunterdon, George Melick, William Mennen, Ronald Sworen, Matthew Holt, Erik Peterson, Robert Walton and Cynthia Yard*

**Of Counsel and On the Brief:**
THOMAS B. HANRAHAN, ESQ. – 017281979

**On the Brief:**
NICHOLAS P. MILEWSKI, ESQ. – 043992003

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................ iii

PRELIMINARY STATEMENT.............................................1

LEGAL ARGUMENT...................................................2

**POINT I**
THIS COURT SHOULD DECIDE WHETHER DEFENDANTS ARE
ENTITLED TO CERTAIN GRAND JURY MATERIAL.........................2

**POINT II**
THIS COURT SHOULD DENY DL&P'S MOTION TO QUASH THE
SUBPOENAS SERVED UPON DL&P and HCPO, AND THIS COURT
SHOULD GRANT THE COUNTY DEFENDANTS' CROSS-MOTION
SEEKING ACCESS TO HCPO GRAND JURY MATERIAL RELATED
TO THE INDICTMENTS OF PLAINTIFFS...............................14

    A. Grand Jury Confidentiality..............................16
    B. Undue Burden..........................................33
    C. Law Enforcement Privilege..............................33
    D. Work-Product Privilege.................................34

CONCLUSION.................................................... 40

## <u>TABLE OF AUTHORITIES</u>

<u>Alabama Pub. Serv. Comm'n. v. Southern R. Co.</u>,
341 <u>U.S.</u> 341, 361 (1951).......................................3

<u>Barlyn v. Dow</u>, ____ <u>N.J. Super.</u> ____ (App. Div. 2014),
2014 <u>WL</u> 179610.......................................8, 10, 13

<u>Camiolo v. State Farm Fire & Casualty Co.</u>,
334 <u>F.3d</u>. 345, 354-57 (3d Cir. (PA) 2003)....................7

<u>Carter v. City of Philadelphia</u>,
2000 <u>U.S. Dist. LEXIS</u> 6658 at p.3 (E.D.Pa.2000).............35

<u>Colorado River Water Conservation Dist. v. U.S.</u>,
424 <u>U.S.</u> 800,813-14(1976).......................................2

<u>County of Allegheny v. Frank Mashuda Co.</u>,
360 U.S. 185, 188-89 (1959)..................................2

<u>Doubleday v. Ruh</u>, 149 <u>F.R.D.</u> 601, 606 (1993)...................36

<u>Douglas Oil Co. of California v. Petrol Stops Northwest</u>,
441 <u>U.S.</u> 211, 226 (1979)............................11, 12, 13

<u>Hawaii Housing Authority v. Midkiff</u>,
467 <u>U.S.</u> 229, 237-38 (1984)..................................3

<u>Hernandez v. Longini</u>,
1997 WL 754041 at p.2, (N.D.Ill.1997).......................36

<u>Hickman v. Taylor</u>, 329 <u>U.S.</u> 495 (1947)........................36

<u>Hicks v. Miranda</u>, 422 <u>U.S.</u> 332, 349 (1975)....................4

<u>In re Sealed Case</u>, 856 <u>F.2d</u> 268, 272 (D.C. Cir. 1988)..........34

<u>Middlesex Ethics Committee v. Garden State Bar Assn.</u>,
457 U.S. 423, 432–37 (1982)..................................34

<u>Schall v. Joyce</u>, 885 <u>F.2d</u> 101, 106 (3d Cir. (PA) 1989).........4

<u>Schultz v. Talley</u>, 152 <u>F.R.D.</u> 181, 185 (W.D.Mo.1993)..........36

<u>Shepherd v. Superior Court of Alameda County</u>,
17 Cal.3d 107 (1976).......................................36

<u>United States v. Procter & Gamble Co.</u>,
  356 <u>U.S</u>. 677 (1958)......................................13, 16

<u>Wong v. Thomas</u>, 238 <u>F.R.D</u>. 548 (D.N.J. 2007....................35

<u>Younger v. Harris</u>, 401 <u>U.S</u>. 37 (1971).................3, 4, 5, 7


**FEDERAL STATUTES**

28 <u>U.S.C</u>. §1738................................................6


**FEDERAL COURT RULES**

<u>F.R.C.P</u>. 26(b)(3)(A)......................................34, 35

<u>F.R.C.P</u>. 26(b)(3)(A)(ii).....................................37

<u>F.R.C.P</u>. 45(a)(4)............................................28


**SUPERIOR COURT RULES**

<u>Rule</u> 3:6-9..................................................35


**OTHERS**

Model Civil Jury Instructions for the
District Courts of the Third Circuit
Section 4.13 - Malicious Prosecution...................20, 22, 38

## PRELIMINARY STATEMENT

This Brief is filed on behalf of Defendants the County of Hunterdon, George Melick, William Mennen, Ronald Sworen, Matthew Holt, Erik Peterson, Robert Walton and Cynthia Yard (the "County Defendants") in opposition to the Motion to Quash subpoenas filed by the Department of Law and Public Safety ("DL&PS"), and in support of the County Defendants' Cross-Motion to Enforce limited portions of the subpoenas and to compel discovery. The subpoenas at issue had been served upon DL&PS and the Hunterdon County Prosecutor's Office ("HCPO") on behalf of the County Defendants seeking documents related to Plaintiffs Trout, Russo and Falat and various aspects of Indictments that had been returned against them by a Hunterdon County Grand Jury in November 2009, which Indictments had subsequently been dismissed on Motion by the Attorney General's Office in or about August 2010. The facts as set forth in the Certification of DAG Greenfogel as filed in support of the Motion to Quash are undisputed.

The County Defendants at this time hereby limit, <u>without prejudice</u>, their request for documents to the following documents: **1) a transcript of the Grand Jury proceedings conducted in Hunterdon County which had resulted in the Indictments of Plaintiffs Trout, Russo and Falat; 2) copies of all documentary evidence presented to the Grand Jury during said proceedings;**

and 3) any indictments or presentments returned by the Grand
Jury.

<u>**LEGAL ARGUMENT**</u>

<u>**POINT I**</u>

**THIS COURT SHOULD DECIDE WHETHER DEFENDANTS ARE
<u>ENTITLED TO CERTAIN GRAND JURY MATERIAL.</u>**

Upon information and belief, the Department of Law and
Public Safety ("DL&PS") and the Hunterdon County Prosecutor's
Office ("HCPO") are in possession of information related to the
county Grand Jury proceedings that had resulted in Indictments
having been returned against Plaintiffs in this matter, which
proceedings form the very foundation of many of Plaintiffs'
claims against the County Defendants in this matter. DDL&PS has
failed to show <u>any</u> valid basis to deny these Defendants access
to such information, and likewise has failed to show any valid
reason that this Court cannot, or should not, grant these
Defendants access to this undeniably crucial evidence.

Abstention from the exercise of federal jurisdiction is the
exception, not the rule. <u>Colorado River Water Conservation Dist.
v. U.S.</u>, 424 <u>U.S</u>. 800,813-14(1976). "The doctrine of abstention,
under which a District Court may decline to exercise or postpone
the exercise of its jurisdiction, is an extraordinary and narrow
exception to the duty of a District Court to adjudicate a

controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id., quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959). "(I)t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it." Alabama Pub. Serv. Comm'n. v. Southern R. Co., 341 U.S. 341, 361 (1951) (Frankfurter, J., concurring in result).

DL&PS erroneously argues that the Younger abstention doctrine should prevent this Court from granting Defendants access to the county Grand Jury material sought in the subpoenas issued to DL&PS and HCPO. See Younger v. Harris, 401 U.S. 37 (1971). Under the Younger abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests. Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 237-238 (1984), citing Middlesex Ethics Committee v. Garden State Bar Assn., 457 U.S. 423, 432-37 (1982). Abstention under Younger is appropriate only if: (1) **there are**

3

**ongoing state proceedings that are judicial in nature**; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. <u>Schall v. Joyce</u>, 885 <u>F.2d</u> 101, 106 (3d Cir. (PA) 1989), <u>citing</u> <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 <u>U.S</u>. 423, 432 (1982). <u>Younger</u> abstention is appropriate **only when state court proceedings are initiated "before any proceedings of substance on the merits have taken place in the federal court**." <u>Id</u>., <u>quoting</u> <u>Hicks v. Miranda</u>, 422 <u>U.S</u>. 332, 349 (1975)(emphasis added). In other cases, federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them. <u>Id</u>.

As the foregoing legal authority explicitly demonstrates, the <u>Younger</u> abstention doctrine <u>cannot</u> be applied to bar this Court's consideration of enforcement of the subpoenas issued pursuant to this Court's authority, since there are **no** "ongoing state proceedings that are judicial in nature" that are related to the County Defendants' subpoenas upon DL&PS and HCPO. <u>Schall</u>, 885 <u>F.2d</u> at 106. To the contrary, the 43-Count Indictments issued in 2009 by the Hunterdon County Grand Jury against Plaintiffs were dismissed on motion by the Attorney General's Office on or about August 23, 2010.

Indeed, if this Court were to abstain from ruling upon enforcement of the subpoenas at issue, it would actually force these Defendants to initiate state court proceedings in order to secure the release of the subpoenaed County Grand Jury documents. The purpose of abstention is certainly not to **create** unnecessary and additional litigation in state courts, but rather to defer to state courts based upon the principle of comity, where there are ongoing state court proceedings.

Any argument that Mr. Barlyn's lawsuit against former Attorney General Paula Dow and the State of New Jersey (among others including the County of Hunterdon, against which Barlyn's claims were dismissed) could constitute an "ongoing" state court proceeding justifying application of Younger abstention in this case would be completely erroneous and without merit. Mr. Barlyn, who was an Assistant Prosecutor with HCPO, is suing his former employer, the State, and its agents/officials/employees for Wrongful Termination. In the matter at bar, Plaintiffs are suing the County and its Freeholders (among many others) for retaliation, discrimination and harassment. Mr. Barlyn's suit and the interests involved therein are completely separate from and unrelated to the matter before this Court, except for the fact that some of the parties and witnesses overlap. If Mr. Barlyn does eventually gain access to County Grand Jury

5

documents, Defendants in this case will **not** be entitled to access said documents. The Attorney General's Office ("OAG") acknowledged this fact in its letter to the Appellate Division, where it explicitly represented that even if Mr. Barlyn was granted access to County Grand Jury documents in his suit, the OAG may move to quash the subpoenas that are the subject of this Motion (see Milewski Certification, **Exhibit "B,"** DAG Greenfogel letter to Appellate Division at p.2). Thus there is **no** ongoing state lawsuit that might justify abstention in this instance.

DDL&PS correctly argues that principles of comity and federalism as embodied in the full faith and credit statute, 28 U.S.C. §1738, _could_ have the ability to restrict this Court's exercise of jurisdiction as to Defendants' access to County Grand Jury material: 1) in the event that state court proceedings relevant to Defendants' subpoenas were "**ongoing**"; and 2) **in the event that the State of New Jersey had promulgated a statute, rule or regulation mandating that jurisdiction relating to the release of county Grand Jury material was exclusively limited to a specific judicial officer**. Fortunately for Defendants, the New Jersey State Legislature has **not** enacted any such statute, rule or regulation which identifies a specific "judicial officer" responsible for determining the release of county Grand Jury material generally, and therefore this Court

is able to, and should, rule upon Defendants' right to access to the County Grand Jury materials in the possession of DL&PS and HCPO.

DDL&PS relies exclusively upon the Third Circuit's decision in Camiolo v. State Farm Fire & Casualty Co., 334 F.3d. 345 (3d Cir. (PA) 2003) in support of their claim that this Court cannot release County Grand Jury material. The basis for the Third Circuit's application of the Younger abstention doctrine in that case is completely distinguishable from the facts in the matter at bar, since the Camiolo ruling was predicated upon that Court's finding that the Commonwealth of Pennsylvania had enacted a comprehensive statutory scheme governing the release of investigating Grand Jury material; and that as a result of said statute, in combination with various relevant provisions of the Pennsylvania Rules of Criminal Procedure, the release of such material was "strictly regulated" by the Commonwealth; and that pursuant to the Commonwealth's regulations "a district court presented with a request to compel the disclosure of any matter occurring before a Pennsylvania investigating Grand Jury should direct the party to first formally petition the judicial officer who possesses the supervisory authority to grant or deny such access." Id. at 354-57 (internal citations omitted).

In contrast to Pennsylvania, however, the State of New Jersey has **not** adopted any statutes, rules or regulations governing the release of county Grand Jury materials which could, or should, prevent this Court's determination of Defendants' right to access the material at issue. DL&PS fails to cite **any** New Jersey State statute, rule or regulation of any kind which would prevent this Court from enforcing the subpoenas issued under this Court's authority, and from granting Defendants access to the County Grand Jury material sought in said subpoenas.

DDL&PS's position that such materials may only be released by the Vicinage 13 Assignment Judge since she, exclusively, is the appropriate judicial officer to direct such release (Pb10-13) is <u>not</u> supported by <u>any</u> legal authority whatsoever, and the New Jersey Appellate Division has rejected DL&PS's position in this regard out-of-hand. In fact, New Jersey's Appellate Division, after a thorough review of state procedural rules governing the release of county Grand Jury material, very recently held with respect to the <u>Barlyn</u> case:

> **[W]e find no authority that necessarily prohibits the <u>judge to whom the civil litigation is assigned</u> from considering a motion seeking to compel disclosure of county Grand Jury material…** <u>Barlyn</u> v. Dow, ___ N.J. Super. ___ (App. Div. 2014), 2014 <u>WL</u> 1796102, Docket No. A-0779-13T4

Slip Op. at p.30 (Approved for Publication May 7, 2014)(emphasis added)(see DL&PS Exhibit "D").

The New Jersey Appellate Division had issued this ruling in the course of rejecting DL&PS's argument to the effect that Mr. Barlyn was required to submit a request for county Grand Jury materials to the Assignment Judge in the vicinage in which the Grand Jury had been empaneled, as opposed to the trial judge in the court where Mr. Barlyn had filed his case. The effect of the Appellate Division's ruling in this regard is that the "judicial officer" permitted to determine whether, and the extent to which, county Grand Jury material can be released is the "**judge to whom the civil litigation is assigned,**" as opposed to the "judicial officer" who had empaneled the county Grand Jury and who is the custodian of the county Grand Jury material.

There exists absolutely no legal authority which should prevent this Court, in which Plaintiffs' claims are venued, from enforcing the subpoenas issued under its authority, which subpoenas seek disclosure of New Jersey County Grand Jury materials. It is therefore submitted that this Court, as the Court to which the civil litigation is assigned, should determine that Defendants have a right to access certain County Grand Jury material, and this Court should order DDL&PS/HCPO to produce the County Grand Jury documents identified in the subpoenas served upon them (**as limited herein, see Point II**).

9

The New Jersey Appellate Division in <u>Barlyn</u> had noted that in "certain exceptional situations, a party opposing disclosure may seek to transfer consideration of the motion to the vicinage where the Grand Jury was empaneled, and the motion judge may decide that transfer is appropriate"; and the Appellate Court had provided a number of specific examples which might support an application for such transfer of venue for the limited purpose of a determination as to whether county Grand Jury materials should be released. <u>Id</u>. at 30. DL&PS has failed to address <u>any</u> of the circumstances as set forth by the Appellate Division which might warrant a transfer of the decision to release the County Grand Jury materials in the matter at bar to the Vicinage 13 Assignment Judge, and DL&PS has failed to affirmatively seek relief in the form of a transfer to any state judicial officer, and away from this Court, in its moving papers.

In addition, the New Jersey Appellate Division had held that any issues mitigating in favor of such a transfer would be remedied if the county Prosecutor's Office which had presented evidence to the county Grand Jury was noticed as to the request for access to the county Grand Jury material. <u>Id</u>. at 30-31. In the matter at bar the HCPO which, <u>prior to supersession by the DL&PS</u>, had conducted a criminal investigation and had presented

10

evidence to the County Grand Jury which had resulted in the issuance of a 43-Count Indictment against Plaintiffs, along with a presentment "that discussed non-criminal malfeasance by other employees of the [Hunterdon County Sheriff's Office] during the tenure of Trout, Russo and Falat" (see DL&PS Exhibit "D" Barlyn, Slip Op. at p.4-5), was served with a subpoena very similar to that which was served upon DL&PS, and which subpoena DL&PS seeks to quash through the instant Motion; it is therefore indisputable that HCPO received notice of Defendants' subpoena demanding access to the County Grand Jury material at issue. Yet, neither DL&PS nor the HCPO have cited <u>any</u> special considerations that might support a transfer of the determination as to the release of County Grand Jury material away from this Court and to the Vicinage 13 Assignment Judge. Based upon the total absence of <u>any</u> factors weighing in favor of a transfer of the decision to release the requested County Grand Jury materials to the Vicinage 13 Assignment Judge, there is **no** factual or legal basis to prevent this Court from exercising jurisdiction so as to make such a decision.

The United States Supreme Court's Decision in <u>Douglas Oil Co. of California v. Petrol Stops Northwest</u>, 441 <u>U.S</u>. 211 (1979) is both precedential and highly instructive in this matter. In <u>Douglas Oil Co.</u> the Court had held that it was <u>improper</u> for the

11

Grand Jury judge, who was the custodian of the Grand Jury
material at issue in that case, to make the determination as to
whether Grand Jury material should be released to civil
plaintiffs in another district. The Court therein had noted that
where a request for Grand Jury material is made in litigation
venued in a court separate from the court that has control over
the Grand Jury material, "the judges of the court having custody
of the Grand Jury transcripts will have no firsthand knowledge
of the litigation in which the transcripts allegedly are needed,
and no practical means by which such knowledge can be obtained.
In such a case, a judge in the district of the Grand Jury cannot
weigh in an informed manner the need for disclosure against the
need for maintaining Grand Jury secrecy. Thus, it may well be
impossible for that court to apply the standard…for determining
whether the veil of secrecy should be lifted." Douglas Oil Co.,
441 U.S. at 226.

     The Douglas Oil Co. Court thus had reversed the Circuit
Court's decision upholding the ruling of the District Court
(which District Court had empaneled the Grand Jury and which
Court was the custodian of the material generated from said
process) thereby releasing the Grand Jury material to the civil
plaintiffs. The Supreme Court had based this ruling on the fact
that the Grand Jury judge did not have sufficient information to

weigh the relevance of the Grand Jury material to the claims of plaintiffs in a civil suit filed in another district; rather, the Court held that it would have been proper for the <u>trial judge</u> to decide whether or not the Grand Jury material should have been released to plaintiffs since the determination as to whether plaintiffs had met the "particularized need" standard for access to Grand Jury material, as established in <u>United States v. Procter & Gamble Co.</u>, 356 <u>U.S</u>. 677 (1958), would be "peculiarly within the competence" of the <u>trial</u> District Court.

In sum, the <u>Douglas Oil Co.</u> Court had held that the judge presiding over a civil case in which secret Grand Jury material is sought, <u>rather than</u> the judge who had presided over the Grand Jury, may be in a better position to weigh the parties' need for such material against the public policy in favor of maintaining secrecy. The New Jersey Appellate Division's Decision in <u>Barlyn</u> is in accordance with the <u>Douglas Oil Co.</u> Court's holding in this respect, and the Appellate Division in <u>Barlyn</u> had further held that there is absolutely **no** state-imposed prohibition upon a judicial officer, other than the judicial officer who presided over the county Grand Jury, from releasing county Grand Jury material in a civil suit, subject to the restrictions as established by the Supreme Court in <u>Procter & Gamble Co.</u>, 356 <u>U.S</u>. 677.

13

As a result of the foregoing, this Court should exercise jurisdiction in enforcing the subpoenas issued under its authority, and this Court should make the decision to release to the County Defendants the County Grand Jury material identified in the subpoenas served upon DL&PS and HCPO (**as limited below**).

## POINT II

**THIS COURT SHOULD DENY DL&PS'S MOTION TO QUASH THE SUBPOENAS SERVED UPON DL&PS AND HCPO, AND THIS COURT SHOULD GRANT THE COUNTY DEFENDANTS' CROSS-MOTION SEEKING ACCESS TO COUNTY GRAND JURY MATERIAL RELATED TO THE INDICTMENTS OF PLAINTIFFS.**

**At this time, the County Defendants hereby withdraw without prejudice the portions of the subpoenas served upon DL&PS and HCPO which seek the production of: 1) all documents related to Plaintiffs; and 2) internal communications between the DL&PS and HCPO.** The County Defendants reserve their rights to seek the production of the aforementioned information (and any and all other information which is discoverable or which may lead to the discovery of admissible evidence) in the future, and may serve future subpoenas as deemed necessary in the defense of Plaintiffs' claims.

The County Defendants hereby limit without prejudice their requests for access to: **1) a transcript of the Grand Jury proceedings conducted in Hunterdon County which had resulted in the Indictments of Plaintiffs Trout, Russo and Falat; 2) a copy**

**of all documentary evidence presented to the Grand Jury during said proceedings; 3) any presentments returned by the Grand Jury**, specifically but not limited to a presentment "that discussed non-criminal malfeasance by other employees of the [Hunterdon County Sheriff's Office] during the tenure of Trout, Russo and Falat" (see DL&PS Exhibit "D," <u>Barlyn</u>, Slip Op. at p.4-5). It is impossible at this time for the County Defendants to further narrow the foregoing requests because the identities of the witnesses who had testified at the proceedings have not been revealed, nor have the documents admitted into evidence been identified. These facts alone mitigate in favor of granting these Defendants access to the County Grand Jury material sought in the subpoenas.

In the Privilege Log annexed to DAG Greenfogel's Certification, DL&PS asserts that the limited documents now sought by the County Defendants are protected by: 1) Grand Jury Confidentiality/Secrecy; 2) the Law Enforcement Investigatory Privilege; and 3) the Work-Product Privilege (see DAG Greenfogel Certification, Exhibit "C"). Legal analysis of these three privileges leads to the contrary conclusion.

a. **Grand Jury Confidentiality**

The standards as set forth by DL&PS in terms of the County Defendants' right to access County Grand Jury material are accurate; the County Defendants must establish a "particularized need" for access to the materials which outweighs the public's general interest in maintaining the secrecy of same. Procter & Gamble Co., 356 U.S. at 681 n.6.

It is submitted that the County Defendants possess a "particularized need" for access to the County Grand Jury materials identified above, which need outweighs the public's general interest in maintaining generally the secrecy of Grand Jury proceedings. The disclosure of witness testimony in Grand Jury proceedings that concluded approximately four (4) years ago has miniscule probability of chilling witness cooperation in future Grand Jury proceedings (see id.), especially since the Grand Jury witnesses were aware at the time they had testified that they may be called to testify at Trial, and that their testimony could be released to indicted persons in the course of criminal discovery; since the proceedings had been conducted approximately four (4) years ago, and since the Indictments had been unsealed and had been released to the public; and since a Protective Order will be entered in this matter strictly limiting any dissemination of Grand Jury material, and since any

16

such evidence would be required to be filed with the Court <u>under</u> <u>seal</u> pursuant to the terms of said Protective Order, it is submitted that the actual disclosure of the material will be closely circumscribed and would be limited to very few persons.

In addition, the fact that a County Grand Jury had issued Indictments against Plaintiffs was widely reported by various media outlets, and the Indictments were unsealed prior to their dismissal. Accordingly, Plaintiffs in this matter do <u>not</u> warrant any protection afforded to "innocent accused who [are] exonerated from disclosure of the fact that [they had] been under investigation." <u>Id</u>. In point of fact Plaintiffs Trout, Russo and Falat are **<u>not</u>** "innocent accused who [were] exonerated" and thus deserve <u>no</u> protection under this rubric, since the Indictments issued against them were dismissed <u>without</u> <u>prejudice</u>, and since Plaintiffs have <u>not</u> been "exonerated" in any manner. Further, and as noted above, since the Indictments against Plaintiffs were unsealed and were released to the public, and were covered very extensively by the media, the fact that Plaintiffs had been under investigation prior to the presentation of evidence to a Grand Jury is public knowledge, and the very limited disclosure of that fact would <u>not</u> unduly infringe upon any privacy interests Plaintiffs may still be

17

entitled to after filing the instant lawsuit, which interests have been dramatically diminished (as discussed further below).

The County Defendants, on the other hand, have established a particularized need for the Grand Jury material at issue, which need far outweighs any general or particular interest in maintaining the secrecy of these Grand Jury proceedings. Plaintiffs have, through their pleading and through discovery, made these Grand Jury proceedings _central_ to their claims against Defendants. Indeed, many of Plaintiffs' claims and allegations are predicated _solely_ upon the Indictments issued against them; if the County Defendants are deprived of the ability to discover what evidence those Indictments were based upon, Defendants will be **severely** prejudiced in their defense against Plaintiffs' claims.

To wit, Plaintiffs' Amended Complaint contains numerous and various allegations to the effect that Defendants were responsible for the fact that a Grand Jury had indicted them. For instance, the Amended Complaint avers in support of the Hostile Work Environment Claim asserted in Count 2 that: "Starting on January 4, 2008, defendant the County of Hunterdon began an investigation into Trout (as well as Russo and Falat) by demanding all documents associated with Trout's hiring process, **which led to Indictments against all three plaintiffs**"

18

(Amended Complaint filed May 3, 2013, <u>ECF Document 32</u> at para.145(h), p.42 (emphasis added); and see para.164(h), p.60). In support of Plaintiffs' Federal Constitutional claims under the First and Fourteenth Amendments in Count 3, Plaintiffs aver that Defendants had "violate[d] Trout, Russo and Falat's civil rights **by maliciously instituting criminal proceedings** against them that deprived the plaintiffs of their liberty that was tantamount to a seizure" (<u>Id</u>. at para.149(c), p.45; and see para.150(f)-(k), p.47-48; para.171(b), p.67). Also in Count 3, Plaintiffs plead that "[i]n or around March of 2010, **at the urging of Defendants**…, indictments were handed down against Plaintiffs" (<u>Id</u>. at para.150(n), p.49).

In Plaintiffs' Conspiracy claim in Count 4, Plaintiffs allege "At all times relevant hereto [the County Defendants] began leaking Grand Jury information to a local newspaper in an effort to encourage the prosecution with public pressure" (<u>Id</u>. at para.153(l), p.53). In order to prove such a claim, Plaintiffs would be required to proffer what information was purportedly "leaked," and Defendants should have a right to evaluate whether such information was actually presented to the Grand Jury, and how same would have been available to any Defendant to "leak." Accordingly, it will be absolutely necessary for Defendants to access the subpoenaed Grand Jury

information to defend against Plaintiffs' numerous and distinct claims predicated upon the Grand Jury proceedings.

**Most notably**, Count 11 of the Amended Complaint advances a claim for Malicious Prosecution against the County Defendants predicated <u>directly and exclusively</u> upon the return of the Indictments by the Grand Jury (<u>Id</u>. at paras.179-193, p.70-78). As a matter of law, whether the Indictments were supported by probable cause, and whether the charges were resolved in a manner favorable to Plaintiffs will be issues <u>central</u> to this claim. <u>See Model Civil Jury Instructions for the District Courts of the Third Circuit Section 4.13 - Malicious Prosecution</u>. Plaintiffs concede that this is an indispensable issue, insofar as Plaintiffs plead "At all times relevant hereto there was a lack of probable cause for the criminal prosecution" (Amended Complaint at para.191, p.77). Pursuant to the Third Circuit's Model Jury Charge Section 4.13, it is **Plaintiffs'** burden to prove a lack of probable cause. Moreover, Section 4.13 charges that an indictment establishes that probable cause existed to initiate the proceeding unless the indictment was obtained through fraud, perjury or other corrupt means.

The letter from DAG Hoffman to Judge Armstrong (which is attached to DAG Greenfogel's Certification as Exhibit "A") fails to address probable cause, and fails to even hint at fraud,

perjury or other corrupt means as the basis for securing the Indictments. Very notably, DAG Hoffman's letter further fails to address <u>in any manner</u> the bases for dismissal of **many** of the 43 Counts against Plaintiffs which the Grand Jury had returned. <u>In order to establish probable cause, Defendants will be required to review the entirety of the Grand Jury material sought in the subpoenas and, candidly, **Plaintiffs'** need to access said material is more urgent than Defendants' in this instance since it is Plaintiffs' burden to prove a lack of probable cause.</u> In any event, the sole means by which to determine whether probable cause had existed for the Grand Jury proceedings, and to prove that the Indictments were not obtained through fraud, perjury or other corrupt means, is to rely upon the content of the Grand Jury transcripts and the evidence submitted to the Grand Jury.

Moreover, in defense of a claim of Malicious Prosecution, even if a plaintiff was acquitted,[1] a defendant may attempt "to prove that plaintiff was in fact guilty of the offense; a verdict of not guilty in a criminal case only establishes that the government failed to prove guilt beyond a reasonable doubt. If [the jury finds] that defendant has proven by a preponderance of the evidence that plaintiff was actually guilty of the

---

[1] In the matter at bar, the Indictments against Plaintiffs were dismissed <u>without prejudice</u>, which is <u>not</u> a favorable termination for Plaintiffs since same may be reinstated at any time.

offense, then defendant is not liable on plaintiff's malicious prosecution claim." <u>Model Civil Jury Instructions for the District Courts of the Third Circuit, Section 4.13</u>.

Thus Defendants can avoid liability for Malicious Prosecution by establishing by a preponderance of the evidence that Plaintiffs had engaged in the misconduct presented to and recognized by the Grand Jury. Access to the entirety of the Grand Jury transcripts and documentary evidence is **<u>required</u>** to assert this defense. There is <u>no</u> alternative means by which to effectively assert this defense, other than to access the entire Grand Jury transcripts in order to evaluate the testimony and other evidence presented to the Grand Jury, and to verify whether same establishes Plaintiffs' misconduct by a preponderance of the evidence.

In addition, Plaintiffs' Initial <u>F.R.C.P</u>. 26 Disclosures identify with specificity literally hundreds of documents relating to the investigation, to the Grand Jury proceedings, to the Indictments that were issued against them, and to the subsequent dismissal of those Indictments, including documents designated as Number 252 through Number 331 (Milewski Certification, **Exhibit "A"**). The final item on the list of identified documents in Plaintiffs' Initial <u>F.R.C.P</u>. 26 Disclosures, Number 331, provides "Documents that are in the

possession of the Attorney General's Office that were previously in the possession of the Plaintiff's [sic] that were removed by the Hunterdon County Prosecutor's Office on December 22, 2008 **are all relevant.**" Id. Thus Plaintiffs admit that documents seized in the course of the criminal investigation which had culminated in their Indictments are relevant and discoverable, and Defendants clearly require access to any and all of this material that was presented to the Grand Jury.

In Plaintiff Trout's certified Answers to Interrogatories, Trout continually speculates that the County Defendants had caused her injury by somehow causing her to be indicted. For example, Interrogatory Number 13 propounded upon Plaintiff Trout asks:

> **Set forth and describe in detail all FACTS and identify all DOCUMENTS supporting your contention that Defendants George Melick, or William Mennen, or Ronald Sworen, or Matthew Holt, or Erik Peterson, or Robert Walton, or Cynthia Yard each had taken an active part in directing or aiding the conduct of your criminal prosecution or of the Grand Jury proceedings resulting in criminal Indictments against you.**

Plaintiff Trout responded to the foregoing inquiry by stating:

> …**Plaintiff further states that the personal vendettas and inappropriate actions of the Freeholder Board and Administrator Yard fueled speculation that an investigation in the activities of my office was warranted and/or justified. Upon information and belief the New Jersey State Police concluded that the Freeholders wrongfully pressured and sought out indictments of the Prosecutor's Office. Upon information and belief the acts of the Freeholders and**

23

Defendant Yard resulted in and/or contributed to the ultimate indictment of the Plaintiffs and the damages flowing from their being investigated for wrongdoing and the ultimate indictments… <ins>Plaintiff also believes that the Attorney General's Office currently has documents that are responsive to these interrogatories</ins>(emphasis added).

Interrogatory Number 15 propounded upon Plaintiff Trout asks:

Set forth and describe in detail all FACTS and identify all DOCUMENTS supporting your contention that either George Melick, or William Mennen, or Ronald Sworen, or Matthew Holt, or Erik Peterson, or Robert Walton, or Cynthia Yard had fabricated any allegations of a criminal nature against you in an effort to compel you to resign your position as Sheriff.

Plaintiff Trout responded to the foregoing inquiry by stating:

Defendants actively sought the indictments by the Hunterdon County Prosecutor's Office to discriminate and to harass me… the allegations in the indictments all contain fabricated information as evidenced in part by their subsequent dismissal, all of which I believe to have been fabricated for the purpose, among other things, of facilitating my resignation.

Interrogatory Number 18 propounded upon Plaintiff Trout asks:

Set forth and describe in detail all FACTS and identify all DOCUMENTS supporting your contention that your criminal prosecution had terminated in your favor in light of the fact that the criminal Indictments had been dismissed only <ins>without</ins> prejudice.

Plaintiff Trout responded to the foregoing inquiry by stating:

I did not feel the criminal prosecution had terminated until July of 2012, if then, when the Attorney General's Office allowed us to retrieve some of our seized possessions which had been used as evidence in the Grand Jury proceedings.

24

Interrogatory Number 27 propounded upon Plaintiff Trout asks:

**Please LIST and describe in detail the active purposeful conduct, encouragement, or substantial assistance that Cynthia Yard had provided to any person you contend had engaged in unlawful harassing conduct towards you on the basis of either your gender or ethnicity.**

Plaintiff Trout responded to the foregoing inquiry by stating:

**The County Administrator communicated with the Prosecutor's Office and encouraged the investigation and indictments of the Plaintiffs…**

Interrogatory Number 28 propounded upon Plaintiff Trout asks:

**Please LIST and describe in detail all of the respective changes in the terms and conditions of your elected position as Sheriff of Hunterdon County that had resulted from each of the complained-about conduct of George Melick, or William Mennen, or Ronald Sworen, or Matthew Holt, or Erik Peterson, or Robert Walton, or Cynthia Yard.**

Plaintiff Trout responded to the foregoing inquiry by stating:

**Changes occurred as a result of the malicious tactics of the Freeholder Board and Yard – i.e… ultimately the investigation and indictments, malicious prosecution and defamation…**

Interrogatory Number 38 propounded upon Plaintiff Trout asks:

**Set forth and describe in detail all FACTS and identify all DOCUMENTS explaining how Defendant Mennen's "call" for an administrative investigation to commence against plaintiffs Trout and Russo on September 7, 2010 had affected the terms and conditions of your elected position as Sheriff of Hunterdon County.**

Plaintiff Trout responded to the foregoing inquiry by stating:

**…The comments made by Mennen made it virtually impossible to perform the duties and responsibilities of my position as Sheriff, as the top-elected law enforcement officer in the County, because his comments inferred [sic] that**

> **despite the dismissal of the indictments, that the County Officials, by their actions, still believed that improper and perhaps criminal actions were taken by me – which was entirely not true…**

Interrogatory Number 39 propounded upon Plaintiff Trout asks the same questions as Number 38 but refers to Defendant Melick, and Trout provides the same response as the response to Number 38. The foregoing examples are merely representative of the extent to which Plaintiffs have made the Indictments, and the Grand Jury proceedings resulting in said Indictments, <u>central</u> issues in this matter, and illustrate Defendants' particularized need for access to the Grand Jury material identified above in order to defend against Plaintiffs' claims.

Plaintiff Russo's certified Answers to Interrogatories are nearly identical to those of Plaintiff Trout in numerous respects, and Plaintiff Russo's Answers likewise identify the criminal investigation, the Grand Jury presentment, the Indictments, and dismissal of said Indictments to be <u>central</u> to Plaintiffs' claims against the County Defendants. For example, Interrogatory Number 15 propounded upon Plaintiff Russo asks:

> **Set forth and describe in detail all FACTS and identify all DOCUMENTS supporting your contention that either George Melick, or William Mennen, or Ronald Sworen, or Matthew Holt, or Erik Peterson, or Robert Walton, or Cynthia Yard had fabricated any allegations of a criminal nature against you in an effort to compel you to resign your position as UnderSheriff.**

26

Plaintiff Russo responded to the foregoing inquiry by stating:

> **Defendants actively sought the indictments by the Hunterdon County Prosecutor's Office to discriminate against me and harass me… [T]he allegations in the indictments all contain fabricated information as evidenced in part by their subsequent dismissal, all of which I believe to have been fabricated for the purpose, among other things, of facilitating my resignation…**

Plaintiffs Trout, Russo and Falat's pleading, <u>Rule</u> 26 Disclosures, and written discovery responses repeatedly claim that the County Defendants and other Defendants had **<u>caused</u>** the criminal investigation, the Grand Jury proceedings, and the ultimate issuance of a presentment and Indictments against Plaintiffs by the Grand Jury. Moreover, Plaintiffs repeatedly refer to and rely upon the fact that the said Indictments had subsequently been dismissed <u>without</u> prejudice by the Attorney General's Office in order to establish their innocence as a fact, and to support their allegation that the entire criminal investigation, the Grand Jury proceedings and the Indictments resulting therefrom had been brought and/or facilitated by Defendants in bad faith and with malicious intent to harm Plaintiffs.

Plaintiffs' claims in this lawsuit are, in <u>very</u> large and significant part, predicated upon the contention that Defendants somehow had been the legal cause of the criminal investigation, the Grand Jury proceedings, and the ultimate issuance of a

presentment and Indictments against Plaintiffs by the Grand Jury, despite the allegation that Plaintiffs were "innocent" of any wrongdoing, purportedly as evidenced by the dismissal of the Indictments; and that Defendants had fabricated evidence that was presented to the Grand Jury, all of which had allegedly resulted in injury to Plaintiffs attributable to Defendants. Plaintiffs **cannot** be permitted to assert such claims and then allowed to hide behind the public's general interest in the secrecy of Grand Jury proceedings to prevent the release of the Grand Jury material.[2] Defendants, therefore, **require** access to the subpoenaed Grand Jury transcripts and evidence in order to defend against numerous claims asserted by Plaintiffs in this lawsuit; in order to show that probable cause for the Grand Jury proceedings had existed; in order to establish that the Indictments and presentment were based <u>exclusively</u> upon the testimony and other evidence that was presented to the county

---

[2] The fact that Plaintiffs have joined in this Motion to Quash is mind-boggling considering the claims they have asserted, and considering the fact that Plaintiffs themselves will require the Grand Jury material at issue to prove their claim of Malicious Prosecution. In fact, Plaintiffs have served discovery requests upon co-Defendants Rowe and DeFillipis in this matter seeking production of the Grand Jury materials at issue (see for example Milewski Certification, **Exhibit "C"**). Moreover, Plaintiff's counsel did <u>not</u> object to the subpoenas prior to their service, despite being provided prior notice pursuant to <u>F.R.C.P.</u> 45(a)(4) (see Milewski Certification, **Exhibit "D"**), and it is submitted that Plaintiffs have therefore waived their ability to challenge the subpoenas at issue.

Grand Jury; in order to show that no testimony or evidence presented to the Grand Jury had been "fabricated" by Defendants, as Plaintiffs' contend; in order to show that Plaintiffs had in fact engaged in the misconduct that was the basis for the Indictments; and in order to show that the HCPO Assistant Prosecutor had presented the testimony and evidence to the Grand Jury, and had charged the Grand Jury with the applicable law properly and correctly, in good faith and without influence from any Defendant.

By pleading that Defendants are liable to Plaintiffs for money damages based upon the contention that Defendants somehow had been the legal cause of the criminal investigation, the Grand Jury proceedings, and the ultimate issuance of a presentment and Indictments against Plaintiffs by the county Grand Jury, and that Defendants had fabricated evidence presented to the Grand Jury; and by claiming that the dismissals of said Indictments <u>without</u> prejudice prove Plaintiffs' innocence of the charges levied against them, Plaintiffs have by the filing of this lawsuit, placed the subpoenaed Grand Jury material <u>squarely</u> at issue, and these Defendants have shown a <u>particularized need</u> for access to said material in order to defend against the claims in this lawsuit. Furthermore, and notwithstanding Plaintiffs' counsel's Certification to the

29

contrary (see Courtney Certification at para.5, submitted with DL&PS's moving papers), by asserting the above-referenced causes of action and by making factual allegations in support of same which are <u>of central importance</u> to this lawsuit, it is submitted that Plaintiffs have <u>affirmatively waived</u> any and all claims of confidentiality or privacy interests that they may have been entitled to assert as normal non-litigant private citizens.

Finally, the amount of discovery that has been conducted to date in this matter should be <u>irrelevant</u> to this Court's determination as to whether Defendants can obtain access to the subpoenaed Grand Jury material. Plaintiffs' claims and factual allegations alone cause the release of the Grand Jury material to these Defendants to be **<u>necessary</u>**, and Defendants' defense of Plaintiffs' claims would be **<u>severely</u>** prejudiced if such access is denied. Moreover, the identities of the witnesses who testified during the Grand Jury proceedings are not known and the documents admitted into evidence have <u>not</u> been identified, and DL&PS and HCPO will very likely claim that same are generally protected by the doctrine of Grand Jury confidentiality, which would result in additional motion practice.

In any event, it would be completely unreasonable and, frankly, impossible for Defendants to attempt to re-create the

entire Grand Jury Record. If Defendants were to attempt to re-
create the Grand Jury Record by deposing any attorney involved
in the presentation to the Grand Jury by HCPO or the review of
same by DL&PS, such attorney would very likely refuse to provide
such information based upon a claim of privilege, which claimed
privilege would result in yet additional motion practice.
Moreover, any such testimony would be infected by that
attorney's mental impressions, and would _not_ be reliable insofar
as it would be filtered through the attorney's perception of
events. Thus, the fact that these witnesses have not yet been
deposed should **not** be a factor that this Court considers in
weighing these Defendants' right to access the material at
issue. There exists **no** alternative means by which these
Defendants can obtain the information that they require in the
defense of Plaintiffs' claims, other than the release of the
Grand Jury transcripts and documentary evidence presented to the
Grand Jury, and any presentments returned by the Grand Jury.

Based upon all of the foregoing facts and legal authority,
it is submitted that the County Defendants have demonstrated
that these Defendants' particularized need to access the county
Grand Jury material at issue far outweighs the public's general
interest in maintaining the secrecy of such proceedings which,
in this case, had concluded many years ago. It is therefore

submitted that this Court should grant these Defendants' Cross-Motion to Enforce the subpoenas issued upon DL&PS and HCPO on behalf of the County Defendants (as limited herein to seek only county Grand Jury materials), and this Court should also deny DL&PS's Motion to Quash said subpoenas in this limited regard. These Defendants may at some time in the future seek to access the other documents that would be responsive to the subpoenas issued to DL&PS and HCPO.

It should be noted that the County Defendants <u>consent</u> to the entry of a Protective Order, and these Defendants <u>consent</u> to an <u>in camera</u> review prior to release of the sought-after Grand Jury material, if the Court finds that such review is appropriate and necessary.[4]

---

[4] It should further be noted that DL&PS's proposed form of Order granting its Motion to Quash includes language to the effect that the subpoenas are vacated and that the County Defendants **"are prohibited from seeking the discovery from DL&PS and the HCPO in the aforesaid subpoenas"** (see DL&PS form of proposed Order granting its Motion to Quash, second ordinant paragraph). Nowhere in DL&PS's moving papers do they present <u>any</u> argument in favor of this dramatic limitation upon the County Defendants' right to engage in discovery in this matter. DL&PS's proposed form of Order would effectively prevent these Defendants from obtaining <u>any</u> information regarding Plaintiffs from DL&PS and HCPO, which limitation is improper, is far beyond the scope of any argument made in support of quashing the subpoenas, and would <u>**severely**</u> prejudice Defendants. Accordingly, these Defendants strenuously object to this provision as contained in the form of proposed Order that DL&PS has submitted.

b. **Undue Burden**

Since the County Defendants have limited their request for access to specific Grand Jury documents, DL&PS's claim of "undue burden" is completely without merit. The documents sought are discrete and finite, and the production of same will not in any manner cause DL&PS or HCPO to incur undue costs or expenses.

Insofar as DL&PS contends that the Grand Jury material is not relevant to the defense of Plaintiffs' claims, such contention is completely false. Plaintiffs' allegations that these Defendants had fabricated evidence that was presented to the Grand Jury, and Plaintiffs' Malicious Prosecution claims **require** release of the Grand Jury material to these Defendants, and the defense against Plaintiffs' claims in this regard would be **severely** prejudiced if Defendants are denied access to the Grand Jury material.

c.   **Law Enforcement Privilege**

DL&PS erroneously claims that the "Law Enforcement Privilege" should bar the County Defendants access to the county Grand Jury materials sought. The legal analysis of the Law Enforcement Privilege as to the release of the Grand Jury material sought by the County Defendants is nearly identical to the analysis conducted when a party seeks to pierce Grand Jury

33

Confidentiality, insofar as the "public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." <u>In re Sealed Case</u>, 856 <u>F.2d</u> 268, 272 (D.C. Cir. 1988). For all of the reasons as set forth above in <u>Point</u> II(a) of this Brief, these Defendants' need for the Grand Jury material in defense of Plaintiffs' claims <u>far</u> outweighs the public's interest in nondisclosure of Grand Jury testimony and exhibits, and any presentments issued by the Grand Jury during proceedings conducted in 2009, especially where the Indictments had been unsealed and released to the public. In addition, since a Protective Order will be entered strictly limiting dissemination of the Grand Jury material, the public's general interest in nondisclosure is vitiated.

### d. <u>Work-Product Privilege</u>

DL&PS further makes the conclusory assertion that the Work-Product Privilege should bar production of the Grand Jury material sought by the County Defendants. <u>F.R.C.P</u>. 26(b)(3)(A) mandates that "[o]rdinarily, a party may not discover documents or tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." The County Defendants are **<u>not</u>** seeking "documents or tangible things that are prepared in anticipation

of litigation": instead, these Defendants seek <u>verbatim</u> transcripts of <u>factual</u> testimony provided by witnesses during county Grand Jury proceedings; documentary evidence that was <u>not</u> prepared in anticipation of litigation, but rather which previously existed and was admitted into evidence <u>as factual</u> during the Grand Jury proceedings; and any presentments that the Grand Jury had produced at the behest of the Assignment Judge who had empaneled the Grand Jury (New Jersey Superior Court <u>Rule</u> 3:6-9), and not because a prosecutor had requested that they do so.

It is submitted that <u>none</u> of the foregoing documents fall within the ambit of the attorney work-product doctrine. None of the documents sought by Defendants were prepared "in anticipation" of the Grand Jury proceedings which had been conducted in 2009, but rather constitute <u>factual</u> information elicited <u>during</u> the Grand Jury proceedings (at least some of which evidence Plaintiffs claim was fabricated by these Defendants). None of the testimony, evidence or presentments constitute work-product under <u>F.R.C.P.</u> 26(b)(3)(A).

Moreover, the work-product privilege was designed to prevent attorneys from using the discovery process to unjustly benefit from the work of their opponents. <u>Wong v. Thomas</u>, 238 <u>F.R.D.</u> 548 (D.N.J. 2007), <u>citing</u> <u>Carter v. City of Philadelphia</u>,

2000 <u>U.S. Dist. LEXIS</u> 6658 at p.3 (E.D.Pa.2000); and <u>Hickman v.</u>
<u>Taylor</u>, 329 <u>U.S</u>. 495 (1947). "Courts have expressly found the
[work-product] privilege unavailable when a prosecutor in a
prior criminal investigation later objects to discovery of her
work product by a litigant in a related civil lawsuit." <u>Id</u>.,
<u>quoting</u> <u>Hernandez v. Longini</u>, 1997 <u>WL</u> 754041 at p.2,
(N.D.Ill.1997); <u>see also</u> <u>Doubleday v. Ruh</u>, 149 <u>F.R.D</u>. 601, 606
(1993); and <u>Shepherd v. Superior Court of Alameda County</u>, 17
<u>Cal.3d</u> 107 (1976) ("[A] recent search of other jurisdictions
found 'no authority holding that a public prosecutor — having
completed his investigation and having announced...that no
further action would be taken by him — is entitled to rely upon
work product doctrine when the fruits of his investigation
become relevant to civil litigation to which he is not a
party.'"). Further, the danger of a "less diligent attorney
raiding the file of a previously diligent attorney" is not
present when the previous case was criminal and the present case
is civil. <u>Id</u>., <u>quoting</u> <u>Hernandez</u>, 1997 <u>WL</u> 754041 at p.2; <u>see</u>
<u>also</u> <u>Schultz v. Talley</u>, 152 <u>F.R.D</u>. 181, 185 (W.D.Mo.1993); and
<u>Doubleday</u>, 149 <u>F.R.D</u>. 601, 606. Similarly, there is no risk of
jeopardizing a criminal investigation that is ongoing. <u>Id</u>.,
<u>citing</u> <u>Hernandez</u>, 1997 <u>WL</u> 754041 at p.2.

As noted above, the county Grand Jury proceedings at issue were conducted in 2009 and had culminated in the return of Indictments against Plaintiffs in November 2009, which Indictments were subsequently dismissed in or about August 2010. Plaintiffs, who were the subjects of the Indictments, have filed this "related civil lawsuit," and thus based upon the foregoing legal authority the work-product privilege **cannot** be asserted by DL&PS <u>or</u> by HCPO to prevent release of the subpoenaed county Grand Jury material.

Furthermore, the work-product doctrine as set forth in <u>F.R.C.P</u>. 26(b)(3)(A) should be pierced upon a showing of: 1) a "substantial need for the materials to prepare its case"; and 2) a party's inability to obtain the substantial equivalent of the materials by other means "without undue hardship." <u>F.R.C.P</u>. 26(b)(3)(A)(ii). In order to defend against Plaintiffs' Malicious Prosecution claim, against Plaintiffs' claim that these Defendants had "fabricated" evidence that was presented to the Grand Jury, and against Plaintiffs' claim that the dismissal of the Indictments <u>without</u> prejudice equates to proof of their innocence, Defendants require the <u>precise</u> testimonial and documentary evidence that was presented to the Grand Jury so that the County Defendants will be able to demonstrate that probable cause had existed for the Grand Jury proceedings, and

to demonstrate by a preponderance of the evidence that Plaintiffs had, in fact, engaged in the malfeasance they had been accused of (<u>Third Circuit Model Jury Charge Section 4.13 – Malicious Prosecution</u>), and these determinations must be based upon the <u>verbatim</u> Record that was presented to the Grand Jury. The fact that the county Grand Jury had returned Indictments against Plaintiffs creates a presumption that Plaintiffs had acted improperly (<u>Third Circuit Model Jury Charge Section 4.13 – Malicious Prosecution</u>). Plaintiffs' allegations <u>alone</u> make access to the Grand Jury material **necessary** for these County Defendants to defend against same, and denial of access to the material at issue would **<u>severely</u>** prejudice these County Defendants' defense.

In addition the County Defendants **<u>cannot</u>** re-create the entirety of the evidence that was presented to the Grand Jury by deposing the witnesses who had testified during the Grand Jury proceedings (whose identities are currently unknown). If the County Defendants attempted to re-create the Grand Jury Record by deposing the Assistant Prosecutor who had presented the case to the Grand Jury, or by deposing any employee/official in DL&PS who had reviewed the transcripts and evidence presented to the Grand Jury, such attorneys would unquestionably assert privilege and would refuse to provide such information, and the County

38

Defendants would be forced to make effectively the same Motion to compel discovery, and furthermore any such testimony would be unreliable since it would be infected by the attorneys' mental impressions of the proceedings. The County Defendants, therefore, have demonstrated a substantial interest in reviewing the precise material which the Grand Jury had relied upon in issuing said Indictments, and there exists no other avenue for these County Defendants to obtain this information.

Moreover, in the letter that DAG Hoffman wrote to Judge Armstrong, Hoffman notes deficiencies in the manner in which the Grand Jury ury had been charged with the law (see DAG Greenfogel Certification, Exhibit "A," at p.2). The County Defendants are required, and entitled, to obtain a verbatim transcription of the charge to the Grand Jury provided by the Assistant Prosecutor who had presented the case in order to prove that Plaintiffs had engaged in the misconduct they had been accused of by a preponderance of the evidence. There exists no other avenue for these County Defendants to obtain this information.

## <u>CONCLUSION</u>

For all of the foregoing factual and legal bases, it is respectfully submitted that this Court should deny DL&PS's Motion to Quash the subpoenas served upon DL&PS and HCPO on behalf of the County Defendants; and it is further submitted that this Court should exercise jurisdiction and should grant the County Defendants' Cross-Motion to Enforce Limited Portions of the Subpoenas served upon DL&PS and HCPO, and to Compel DL&PS and HCPO to produce, or to make available for inspection and copying, any and all of the following documents in their possession: 1) a transcript of the Grand Jury proceedings conducted in Hunterdon County which had resulted in the Indictments of Plaintiffs Trout, Russo and Falat; 2) a copy of all documentary evidence presented to the Grand Jury during said proceedings; and 3) any presentments returned by the Grand Jury.

**THOMAS B. HANRAHAN & ASSOCIATES, LLC**
*Attorneys for Defendants the County of*
*   Hunterdon, George Melick, William Mennen,*
*   Ronald Sworen, Matthew Holt, Erik Peterson,*
*   Robert Walton and Cynthia Yard*



By:_____
        NICHOLAS P. MILEWSKI, ESQ.

Dated: June 2, 2014

*L:\Nick's Files\Briefs\Falat\Brief for access to GJ docs.docx*

40