**NOT FOR PUBLICATION**                                                                     **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN FALAT, JR., et al., | : Civil Case No. 12-6804 |
| Plaintiffs, | : (FSH) (MAH) |
| v. | : **OPINION** |
| THE COUNTY OF HUNTERDON, et al., | : November 20, 2014 |
| Defendants. | : |

**HOCHBERG, District Judge:**

     This matter comes before the Court upon motions to dismiss by Defendants Edmund

DeFilippis,[1] Kenneth Rowe (Docket No. 63) and Defendants the County of Hunterdon, Matthew

Holt, George Melick, William Mennen, Erik Peterson, Ronald Sworen, Robert Walton, and

Cynthia Yard (Docket No. 64).  The Court has reviewed the submissions of the parties and

considers the motion pursuant to Federal Rule of Civil Procedure 78.

## I. BACKGROUND OF THE INSTANT MOTION

     Plaintiffs are Deborah Trout and Michael Russo, the former Sheriff and Undersheriff of

Hunterdon County, as well as John Falat, Jr., a former employee of the Hunterdon County

Sheriff's Office. They allege that Defendants—various local public officials—retaliated against

---

[1] The Amended Complaint names "Edward DeFillipis." Elsewhere, this Defendant is referred to
as "Edmund DeFilippis" and "Edward DeFillippis." The Court will refer to this Defendant as
"Edmund DeFilippis," as used in his motion.

Plaintiffs Trout and Russo for bringing civil lawsuits against the County. Defendants contend that the alleged retaliation, if it happened at all, occurred between 2008 and 2010, which would be untimely based on a two-year statute of limitations.

Plaintiffs initially filed a twenty-count Complaint against sixteen named individuals and entities on August 2, 2012 in New Jersey Superior Court, Hudson County.  Defendants removed the action to this Court on October 24, 2012. After motions to dismiss were filed by a number of Defendants, Hon. Stanley Chesler, U.S.D.J., dismissed several of the causes of action with prejudice and several without prejudice, allowing Plaintiffs to replead certain claims against some of the Defendants.  Judge Chesler's Opinion and Order were clear directions to Plaintiff to rely on "specific factual allegations to support each of [their] claims," "articulating precisely which claims each Plaintiff is making against whom" rather than asserting "impermissibly vague group pleading." Plaintiffs filed an Amended Complaint against the twelve remaining Defendants. Defendants again moved to dismiss.[2]  Following reassignment of the case to the undersigned, this Court ordered Plaintiffs to state each "[s]pecific cause of action for violation of the Constitution under § 1983 or § 1985" and to "state individually by each Defendant named in each Count that alleges a federal constitutional rights violation, the paragraph number of the Amended Complaint that sets forth the asserted factual grounds for each claim."

---

[2] These Defendants include: the County of Hunterdon; Investigators Kenneth Rowe and Edmund DeFilippis; Hunterdon County Freeholders George Melick, William Mennen, Ronald Sworen, Matthew Holt, Erik Peterson, and Robert Walton (the "Freeholder Defendants"); and County Administrator Cynthia Yard. Defendant Donna Simon, who organized a 2009 recall campaign against Sheriff Trout, did not respond to the Complaint; clerk's entry of default has been entered against her.

**(a) Plaintiffs' Lawsuits and Alleged Retaliation**

Between 2008 and 2010, Plaintiff Trout was the Sheriff of Hunterdon County, Plaintiff Russo was an Undersheriff and Plaintiff Falat was an investigator for the Sheriff's Office.  A decade before Plaintiffs took office, Undersheriff Russo and Sheriff Trout brought civil lawsuits against the County.  Specifically, in 1998, Plaintiff Trout—then a sheriff's officer—sued the Hunterdon County Freeholders based on purported violations of the New Jersey Law Against Discrimination ("NJ LAD") and the New Jersey Conscientious Employee Protection Act ("CEPA"). (Am. Compl. ¶ 20). Similarly, in 1995 Plaintiff Michael Russo filed an action pursuant to 42 U.S.C. § 1983 against the Freeholders and the Hunterdon County Sheriff's Office. (Am. Compl. ¶ 18).  Plaintiffs have not pled the facts underlying these actions with any particularity. Both actions settled. (Am. Compl. ¶ 21).

In 2007, Plaintiff Trout announced her candidacy for the Office of the Sheriff of Hunterdon County. (Am. Compl. ¶ 22).  She won the election, serving as Sheriff between 2008 and 2010.  (Am. Compl. ¶ 40).  From the beginning of her campaign until she left office, Plaintiffs Trout and Russo allege that Defendants wrongfully discriminated against them in retaliation for their earlier lawsuits, and retaliated against Trout's subordinates for assisting in her campaign. (Am. Compl. ¶ 24).

The Amended Complaint includes a list of different purported acts of retaliation by different public officials, as follows: Plaintiffs claim that Defendant County Counsel DeSapio and the Freeholder Defendants demanded that Plaintiff remove pictures of herself in County insignia from her political website in 2007, (Am. Compl. ¶¶ 25, 26); they claim Defendant Freeholder Melick allegedly stated, "I can't believe the bitch won," and "[t]he bitch sued us and we're not going to make it easy for her," after Plaintiff Trout's 2007 election victory, (Am.

Compl. ¶ 29); they claim Defendant DeSapio allegedly instructed Plaintiff Trout not to hire Plaintiff Russo as Undersheriff, stating he "was a 'problem' [because Russo] had previously sued the county," and Defendant Freeholder Melick allegedly demanded that Plaintiff Trout "get rid of [Russo] immediately . . . [because] he sued the County and you need to get rid of him," (Am. Compl. ¶¶ 32, 38); Plaintiffs claim that the Freeholder Defendants allegedly reviewed Plaintiff Trout's proposed appointments to subordinate positions in the Sheriff's Office, "demanded resumes, organizational charts and job descriptions . . . demands [that] were never made of any prior newly elected Hunterdon County Sheriff," and "refused to pass a resolution acknowledging" Plaintiff Trout's selection of subordinates or approving back pay for them, (Am. Compl. ¶¶ 34, 39, 50, 52, 55); they complain that all Defendants purportedly "refused to permit access [sic] the Sheriff's Trust Fund," "interfered with the hiring of office employees," refused to allow Plaintiff "to relocate [her office] to the newly renovated Historic Courthouse," and refused to renew annual contracts, (Am. Compl. ¶¶ 131-135); Plaintiffs claim that Defendant County Administrator Yard allegedly "limit[ed] [Plaintiff Trout's] . . . number of unclassified appointments she could make within her budget" and ordered that no public department could "perform work for the Sheriff's Department without Yard's consent," (Am. Compl. ¶¶ 47, 133); they claim that the Freeholder Defendants purportedly passed resolutions that "systematically discriminate[d] and retaliate[d] against Plaintiff by cutting her budget in amounts disproportionate to other County budgets" in 2008 and 2009, (Am. Compl. ¶¶ 57, 101); and they claim that "[D]efendant Melick filed an ethics charge against Plaintiff Trout with the New Jersey ELEC concerning an alleged campaign impropriety," (Am. Compl. ¶ 88).

**(b) Hunterdon County Prosecutor's Office Investigation**

Plaintiffs contend that Defendants' actions culminated in the Prosecutor's Office investigating and arresting Plaintiffs. The Amended Complaint alleges that unnamed Defendants "began corresponding with the Hunterdon County Prosecutor's Office seeking to involve them in an investigation" of Plaintiffs for "non-compliance with the County's hiring policies." (Am. Compl. ¶¶ 44, 46) (internal quotation marks omitted). In 2008, the Prosecutor's Office sent a letter to Plaintiffs seeking copies of all hiring policies and documentation "to ensure that the manner in which candidates for [Sheriff's Office] were hired comports with sound law enforcement practices." (Am. Compl. ¶ 59). Plaintiff Trout claims that she then received a grand jury subpoena in 2008 to supply "[a]ll employment application and forms, resumes, letters of reference, background investigation reports . . . Arrest Reports, Investigation Reports" and other documentation for specific new hires. (Am. Comp. ¶ 64). Additionally, unnamed Defendants purportedly "disclosed . . . confidential Grand Jury information and/or confidential investigations" to the press, resulting in newspaper articles about an investigation of Plaintiff Trout. (Am. Compl. ¶¶ 71, 74, 75).

On July 29, 2008, Plaintiff Falat claims he was stopped by Defendants Detectives Rowe and DeFilippis, searched, and arrested for "false swearing . . . on his employment application," at which time Defendants purportedly "tried to entice Falat into providing them with information concerning Plaintiffs Trout and Russo." (Am. Compl. ¶¶ 76, 81, 84). Additionally, Plaintiffs allege that Defendants provided an e-mail to the prosecutor's office which an unspecified person obtained "illegally and improperly" by breaking into "Russo's e-mail account." (Am. Compl. ¶ 84). On December 22, 2008, the Prosecutor's Office executed search warrants on the Hunterdon County Sheriff's Office and Plaintiff Falat's residence, and frisked Plaintiffs Trout, Russo and

Falat. (Am. Compl. ¶¶ 92, 93). In March 2010, a grand jury indicted Plaintiffs on a total of 43

criminal counts, (Am. Compl. ¶ 187), and on May 7, 2010 the Hunterdon County Prosecutor's

Office unsealed the indictments of Plaintiffs Trout, Russo and Falat, (Am. Compl. ¶ 109), at

which time Plaintiffs were arrested, (Am. Compl. ¶ 187). After the arrests, the Freeholder

Defendants allegedly passed resolutions requesting that Plaintiffs take a leave of absence and

authorizing an audit to verify Sheriff's Office financial accounts. (Am. Compl. ¶ 111). In August

2010, the New Jersey Attorney General's Office assumed control of the criminal case against

Plaintiffs from the Hunterdon County Prosecutor's Office, reviewed the indictments, and

dismissed the indictments against Plaintiffs without prejudice on August 23, 2010. (Am. Compl.

¶¶ 117, 118, 122).


**(c) Alleged Retaliation After Dismissal of the Indictments**

After the indictments were dismissed, Plaintiffs allege three instances of purported

retaliation, set forth below:

- "On August 12, 2010 . . . Defendant George Melick sent a letter on Hunterdon
  County letterhead to [the Governor] and copies of said letter to numerous other
  individuals questioning as to why the case had been moved from the Hunterdon
  County Prosecutor's Office to the Attorney General's Office. . . [Melick]
  indicated that in his 32 years of service on the Board of Chosen Freeholders, he
  had served with six (6) different Sheriffs, 'all of which had conducted themselves,
  to a certain of [sic] degree, in a manner that challenged the public's trust.['] . . .
  Defendant Melick asked the Governor to investigate the reassignment of the cases
  . . . [and] copied this letter to various politicians and news papers . . . ." (Am.
  Compl. ¶¶ 118-120).

- "On Tuesday September 7, 2010, Freeholder Director William Mennen, at a
  regular freeholder meeting, stated, with regards to the dismissal of all charges,
  'This body sat back out of respect and protocol' . . . 'attempting to allow the
  Criminal Justice system to do its job' . . . [Now] 'it is incumbent upon the

freeholder board to administratively review the allegations.'" (Am. Compl. ¶ 125).

- "It was reported in various newspaper articles that on Tuesday August 2, 2011 at a regularly scheduled freeholder meeting, the Freeholders, with the consent and knowledge of Defendants DeSapio and Yard, began making derogatory remarks and comments about Plaintiffs. In this public session, the Freeholders disclosed materials and discussed issues that constituted an unwarranted invasion of the Plaintiffs' individual privacy, including personal material relating to insurance programs and information relating to the Plaintiffs' personal and family circumstances which they knew should not have been disclosed publicly." (Am. Compl. ¶ 127).

These are the only incidents alleged to have occurred after August 2, 2010.  The Amended Complaint does not allege that the Freeholders initiated an administrative investigation. Nor does the Amended Complaint state who made the alleged derogatory remarks, what those remarks were, or how the remarks are attributable to any of the Defendants.

Plaintiffs also state, without any further factual averrals, that "[t]hese acts of harassment, discrimination and retaliation continued until the filing of this Complaint" and that the "retaliatory actions against Plaintiff Russo . . . continues to date." (Am. Compl. ¶¶ 41, 43).  The Amended Complaint does not identify any additional alleged act of harassment.

The Amended Complaint continues to assert that this conduct was part of a conspiracy: the Defendants "conspired with the other Defendants . . . to harass, discriminate and/or retaliate against Plaintiffs Trout and Russo for exercising their [constitutional] right[s] . . ."; and "Defendants Rowe, DeFillippis [sic], DeSapio, the Defendant Freeholders, Yard, Simon, John Does l-20 and ABC Corporations 1-20 had numerous conversations concerning Plaintiffs and her appointments in the Hunterdon County Sheriff's Office. These communications were part of a concerted effort to retaliate, harass and discriminate against Plaintiffs, prevent them from

exercising their State and Federal civil rights and retaliate against them for their activities." (Am. Compl. ¶¶ 41, 61). The Amended Complaint does not state when such purported agreement was made, the purpose of such agreement, or the circumstances under which any Defendant purportedly agreed.

## II. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949 (internal quotations and alterations omitted).

### III. DISCUSSION

Plaintiffs have had ample opportunity to state clearly the factual basis of each cause of action asserted, and have been admonished to do so more than once.  Plaintiffs' initial Complaint was dismissed by Judge Chesler, who ordered Plaintiffs to "furnish the Court with a Complaint that clearly spells out which individual plaintiffs are making what legal claims against whom and set forth the specific factual allegations to support each of those claims." (Docket No. 28).  In response, Plaintiffs filed a 78-page Amended Complaint asserting a protracted list of 42 U.S.C. § 1983 claims, without clarifying the specific constitutional wrong asserted.  Plaintiffs were again ordered to identify specific factual allegations and to submit a chart listing the specific federal causes of action Plaintiffs intended to assert, as well as the Defendants against whom Plaintiffs sought to assert each cause of action.  The Court finds that any causes of action that Plaintiffs failed to specifically assert—as required by Court Order—have been abandoned.

Based on the chart that Plaintiffs submitted and the Amended Complaint, Plaintiffs assert the following causes of action:

(1) "NJ LAD/Gender Discrimination";

(2) "Hostile Work Environment";

(3) "First And Fourteenth Amendments 42 U.S.C. § 1983," specifically based on a
    purported: (A) "Equal Protection Violation [of the] 14th Amendment"; and (B) "Free
    Speech Violations Of 1st Amendment";

9

(4) "Conspiracy Under § 1983, §1985 And The New Jersey Constitution," specifically based on: (A) "Retaliating Against Trout For Appointing Russo And Falat In Violation Of Her Equal Protection Rights Under The 14th Amendment"; and (B) "Retaliating Against Trout And Russo For Their Prior Lawsuits In Violation Of Their Free Speech Rights Under The 1st Amendment";

(5) "New Jersey Constitution/Civil Rights Act";

(6) "Retaliation";

(7) "Constructive Discharge";

(8) "Aider And Abettor Liability As To Individual Defendants";

(9) "Respondeat Superior";

(10) "Official Policy"; and

(11) "Malicious Prosecution." (Docket No. 57).

Despite Judge Chesler's ruling, which dismissed with prejudice certain claims in their entirety as well as certain claims as asserted against particular Defendants, Plaintiffs persist in reasserting some of these already-dismissed claims.  For instance, the Court's March 19, 2013, Order "dismissed with prejudice as against all Defendants" Plaintiffs' equal protection claims. Yet Plaintiffs purport to assert a claim based on the Equal Protection Clause of the Fourteenth Amendment. (Docket No. 57; Am. Compl. ¶¶ 149, 153).  Similarly, Plaintiffs argue that "Plaintiffs Trout And Russo can state a claim under the New Jersey Law Against Discrimination against [all twelve Defendants] because each Defendant discriminated against the Plaintiffs." But Judge Chesler clearly and explicitly held that Plaintiffs' NJ LAD claim was dismissed with

prejudice against all Defendants except the County.  Plaintiffs did not seek reconsideration of any of Judge Chesler's rulings within the time limits set forth by this Court's Local Rules. "The doctrine of the law of the case . . . limits relitigation of an issue once it has been decided." *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002).  The Court will not tolerate Plaintiffs' attempt to revive these causes of action in the Amended Complaint; these claims remain dismissed.[3]  Counsel is admonished to respect all prior court rulings, regardless of which judge entered such ruling.

Thus, the remaining counts include: (a) free speech claims under the First Amendment; (b) a conspiracy claim asserted pursuant to 42 U.S.C. § 1985(3); (c) a malicious prosecution claim under the Fourth Amendment against the individual Defendants; and (d) state law claims under the New Jersey Constitution, a state law malicious prosecution claim, and a claim under NJ LAD for discrimination, hostile work environment, retaliation, and constructive discharge. These remaining causes of action are addressed below.

**(a) First Amendment Retaliation Claims**

Defendants assert that the First Amendment claims are untimely because the August 2, 2012, Complaint was filed more than two years after the alleged violations. The parties agree

---

[3] Separately and independently, Plaintiff Trout's gender discrimination claim asserted under the Equal Protection Clause is untimely. Under the Equal Protection Clause, a gender discrimination plaintiff must plead that defendants "treated [Plaintiff] differently from other individuals similarly situated *and did so based upon her gender.*" *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992) (emphasis added). At least one act within the limitations period must evidence a practice of gender discrimination. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013); *see also* section (b)(1) of this Opinion. None of Plaintiffs' timely alleged acts are pled as—or could be construed as—evidencing disparate treatment based on gender, (Am. Compl. ¶¶ 118-120, 125-127, 129), rather they are pled as generic retaliation based on Plaintiff Trout's prior lawsuit. "[A] pure or generic retaliation claim simply does not implicate the Equal Protection Clause." *Thomas v. Independence Twp.*, 463 F.3d 285, 298 n.6 (3d Cir. 2006) (internal alterations omitted).

that the applicable limitations period for Plaintiffs' § 1983 claim is two years. *See O'Connor v. City of Newark*, 440 F.3d 125, 126-27 (3d Cir. 2006) (finding that Section 1983 actions in New Jersey must be brought "within two years of accrual of the cause of action."). The limitations period begins at "the time when the plaintiff knows or has reason to know of the injury which is the basis of the § 1983 action." *Genty v. Resolution Trust Grp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Plaintiffs concede that events before August 2, 2010, occurred outside the limitations period, but assert that they remain viable under the "continuing violation doctrine." A court may dismiss an untimely claim where the face of the complaint demonstrates that the continuing violation doctrine does not apply. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 295 (3d Cir. 2001) (affirming 12(b)(6) dismissal); *Budzash v. Howell Twp.*, 451 F. App'x 106, 109 (3d Cir. 2011) (finding dismissal warranted where plaintiff invoked the continuing violation doctrine, but "the complaint facially show[ed] noncompliance with the limitations period and the affirmative defense clearly appear[ed] on the face of the pleading.").

<u>(1) Application of Continuing Violation Doctrine To Otherwise Untimely Acts</u>

Plaintiffs Russo and Trout each allege that, during their employment at the Sheriff's Office, Defendants retaliated against them for exercising First Amendment rights.  They claim that all conduct from 2007 to 2010 is timely because "[t]he objectionable conduct began when Trout was elected in November of 2007 and continued, unabated, through the end of Trout's term on December 31, 2010. All of the complained-of conduct is timely pursuant to the continuing violation doctrine." (Pls.' Opp'n Br. 39). They offer no facts nor legal analysis beyond this formulaic incantation of the "continuing violation" legal label.

Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991).  However, the doctrine only applies to a series of "acts which are not individually actionable but [must] be aggregated to make out" a claim. *O'Connor*, 440 F.3d at 127. In other words, the continuing violation doctrine does not preserve "discrete acts, which are individually actionable . . . [These claims] must be raised within the applicable limitations period or they will not support a lawsuit." *Id.* at 127 (citing *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002)).  Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. These separate events are actionable at the time they occur and "cannot be resurrected by being aggregated and labeled continuing violations." *O'Connor*, 440 F.3d at 129. On the other hand, incidents "constituting a hostile work environment are part of one unlawful employment practice" and may be actionable under the continuing violation doctrine, although otherwise outside of the limitations period. *Morgan*, 536 U.S. at 118.

Every act of retaliation in response to a plaintiff's exercise of a First Amendment right is a discrete and individually actionable event. *See O'Connor*, 440 F.3d at 128 ("[The] rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. First Amendment retaliation claims are always individually actionable, even when relatively minor."). Accordingly, "First Amendment retaliation claims are not subject to the 'continuing violations' exception to the statute of limitations." *Myers v. Cnty. of Somerset*, 515 F. Supp. 2d 492, 501 n.1 (D.N.J. 2007) *aff'd*, 293 F. App'x 915 (3d Cir. 2008); *Toscano v. Borough of Lavallette*, Civ. No. 04-4412, 2006 WL 1867197, at *2 n.3 (D.N.J. June

30, 2006) (same). Here, for all of Plaintiffs' retaliation claims, "each of the challenged incidents was individually actionable as a First Amendment retaliation claim when it occurred." *Livingston v. Borough of McKees Rocks*, 223 F. App'x 84, 89, n.3 (3d Cir. 2007). Moreover, a review of the Amended Complaint shows that all acts of alleged retaliation occurring between 2007 and August 2, 2010 were discrete events, individually actionable at the time they occurred. It is apparent from the face of Plaintiffs' Amended Complaint that these claims have "not been brought within the statute of limitations." *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989) (internal quotation marks omitted).

Remarkably, when put on notice and given the opportunity to brief the continuing violation theory, Plaintiffs offered no legal argument to support the application of the continuing violation doctrine to their First Amendment claims and avoid the effect of the limitations bar. Plaintiffs were given ample notice of Defendants' statute of limitations argument and opportunities to support their invocation of the continuing violation doctrine with additional factual averrals and legal analysis, but they have not done so. Plaintiffs have not genuinely contested that all instances of purported First Amendment retaliation before August 2, 2010, are untimely. These claims are dismissed.

(2) Whether Plaintiffs Have Alleged Retaliation Within the Limitations Period

Plaintiffs contend that several acts of purported retaliation occurred within the limitations period: on August 12, 2010, Defendant Melick allegedly sent a letter to the Governor implying that Plaintiff Trout acted "in a manner that challenged the public's trust" and asked the Governor to examine why the County prosecutor had been removed from investigating Plaintiffs, (Am. Compl. ¶ 119); on September 7, 2010, Plaintiffs claim that Freeholder Mennen called for the

14

Freeholders to administratively review the charges against Plaintiffs after dismissal, allegedly stating: "This body sat back out of respect . . . [for] the Criminal Justice system . . . [but now] it is incumbent upon the freeholder board to administratively review the allegations [against Plaintiffs]," (Am. Compl. ¶ 125); on August 2, 2011, during a Freeholders meeting, unnamed individuals made "derogatory remarks and comments about Plaintiffs," revealing personal matters like family circumstances and insurance programs, (Am. Compl. ¶ 127); and that "[t]hroughout . . . Trout's term as Sherriff [sic], Defendants . . . refused to permit access the Sherriff's [sic] Trust Fund (STF)." (Am. Compl. ¶ 131).  For all of these acts, Defendants contend that they are entitled to qualified immunity.

"To determine in this case whether [Defendants] have lost their immunity, we must engage in a two step analysis. First, we must decide 'whether a constitutional right would have been violated on the facts alleged' . . . . Second, if we believe that a constitutional violation did occur, we must consider whether the right was 'clearly established.'" *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Turning to whether Plaintiffs have pled a constitutional violation on the facts alleged, to state a "retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

But where the alleged retaliation is speech, the speaker's own First Amendment rights impact whether a plaintiff's retaliation claim is actionable. *See*, *e.g.*, *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (finding no actionable claim where "alleged retaliatory acts were

criticism, false accusations, or verbal reprimands"). There is particular concern where a plaintiff

sues a public official, alleging the defendant-official's speech constitutes retaliation for the

plaintiff's exercise of her First Amendment Rights: "The nature of the alleged retaliatory acts has

particular significance where the public official's acts are in the form of speech. Not only is there

an interest in having public officials fulfill their duties, a public official's own First Amendment

speech rights are implicated."  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir.

2000); *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (quoting *Suarez*, 202 F.3d at

678, in analysis of clearly established law). Accordingly, "a limitation on the retaliation cause of

action based on [a public official's] speech is necessary to balance the [official's] speech

interests with the plaintiff's speech interests." *Mun. Revenue Servs., Inc. v. McBlain*, 347 F.

App'x 817, 825 (3d Cir. 2009)) (quoting *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 417

(4th Cir. 2006)). The limitation is as follows: "where a public official's alleged retaliation is in

the nature of speech, in the absence of a threat, coercion, or intimidation intimating that

punishment, sanction or adverse regulatory action will imminently follow, such speech does not

adversely affect a [plaintiff's] First Amendment rights, even if defamatory." *McBlain*, 347 F.

App'x at 825; *McLaughlin*, 271 F.3d at 573 (quoting *Suarez*, 202 F.3d at 687).

Plaintiffs here allege that Defendants, public officials, retaliated against Plaintiffs in the

form of speech:  Defendant Freeholder Melick allegedly sent a letter to the Governor implying

that Plaintiffs' acts "challenged the public's trust"; and unidentified Freeholders made

unspecified "derogatory remarks" about Plaintiffs at a Freeholder meeting.  This mere criticism

of Plaintiffs cannot support a First Amendment retaliation claim. *See Monn v. Gettysburg Area*

*Sch. Dist.*, Civ. No. 12-2085, 2013 WL 1345501, at *5 (M.D. Pa. Apr. 2, 2013) (dismissing

retaliation claim because "Plaintiffs do not allege that the School District officials' criticism and

belittlement included any threat of punishment, of sanction, or equivalent adverse action.") *aff'd*, 553 F. App'x 120 (3d Cir. 2014); *Morrison v. City of Reading*, Civ. No. 02-7788, 2007 WL 764034, at *9 (E.D. Pa. Mar. 9, 2007) ("Disparaging comments alone cannot form the basis for a First Amendment retaliation claim."). Instead, the public official's own First Amendment speech—criticizing Plaintiff Trout without threat or coercion—is protected speech that cannot form the basis of a First Amendment claim. *See Citizens for a Better Lawnside, Inc. v. Bryant*, Civ. No. 04-1512, 2007 WL 4547496, at *3 (D.N.J. Dec. 18, 2007) (balancing plaintiff's First Amendment retaliation claim based on borough councilman's criticism of plaintiff with the councilman's right to civic dialogue and finding the speech not actionable absent implicit or explicit threats) (citing *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 68-71 (2d Cir. 1999) (reversing denial of motion to dismiss on qualified immunity because, in the absence of threats, intimidation, or coercion, legislators' "disparaging, accusatory, or untrue statements about [plaintiff] fail to state a claim for violation of [plaintiff's] constitutional rights")); *Koren v. Noonan*, Civ. No. 12-1586, 2013 WL 5508688, at *2 (E.D. Pa. Oct. 3, 2013) ("What Plaintiff alleges is hardball politics, or at most defamation, not retaliation as recognized in the case law."). Even accepting Plaintiffs' allegations as true and giving them the benefit of all favorable inferences, Plaintiffs have pled no facts—and made no argument—that either of these acts included "a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow." *McLaughlin*, 271 F.3d at 573 (reversing denial of motion to dismiss on qualified immunity).

Plaintiffs also assert that Freeholder Mennen's call for an administrative review by the Board constitutes retaliation.  This too is insufficient to state a claim for retaliation.  First, the Amended Complaint does not plead that Mennen had the authority to initiate an administrative

investigation, instead he is alleged to have urged the "freeholder board to administratively review the allegations against Plaintiffs." (Am. Compl. ¶ 125). "[S]trongly urging or influencing, but not 'coercing' a third party to take adverse action affecting a plaintiff's speech," does not violate a plaintiff's constitutional rights. *McLaughlin*, 271 F.3d at 573 (citing *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85 (3d Cir. 1984)).  Second, the Amended Complaint does not plead that any investigation was approved by the Board at Mennen's urging, nor that any administrative investigation ever commenced. Third, "[g]enerally, an internal investigation alone does not constitute" retaliation. *Lakkis v. Lahovski*, Civ. No. 12-1024, 2014 WL 346986, at *6 (M.D. Pa. Jan. 30, 2014); *see Radolf v. Univ. of Conn*., 364 F. Supp. 2d 204, 224 (D. Conn. 2005) ("[C]ounsel could not cite a single case in which a court had held that mere participation in an internal investigation—standing alone, without allegations of attendant material disadvantage in employment terms—could support a First Amendment retaliation claim."); *Martsolf v. Brown*, 2009 WL 5111767, at *4 (M.D. Pa. Dec. 15, 2009) ("Plaintiff cannot persuade the court that mere [internal affairs] inquiry into the facts pertaining to [a] harassment complaint [filed against plaintiff] constitutes [First Amendment] retaliatory action.") *aff'd*, 457 F. App'x 167 (3d Cir. 2012); *Bibbs v. Twp. of Kearney*, 2011 WL 765970, at *2 (D.N.J. Feb. 25, 2011).

Finally, Plaintiffs allege that there is timely conduct because Defendants' acts are purportedly "ongoing." They plead—without any further factual basis—that the "retaliatory actions against Plaintiff[s]. . . continues to date. "(Am. Compl. ¶¶ 40, 43).  These general terms do not meet the *Iqbal* pleading standard of stating enough facts to suggest a plausible claim. Merely alleging the existence of "ongoing" violations, without any specificity as to what those violations include, is a legal conclusion that the Court must disregard. *See*, *e.g*., *Bailey v. Reed*,

29 F. App'x 874, 875 (3d Cir. 2002) ("Although the complaint contains conclusory assertions of ongoing conduct there are no factual references to any events occurring [within the limitations period], conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss.") (internal quotation marks omitted); *Soppick v. Borough of W. Conshohocken*, 118 F. App'x 631, 636 (3d Cir. 2004) (holding that plaintiff's allegation of an "ongoing pattern of misconduct" does not state a timely violation and affirming 12(b)(6) dismissal on statute of limitations).

Other alleged actions, although styled as ongoing, are in fact untimely. Plaintiffs claim that Defendants refused to permit access to the Sheriff's Trust Fund throughout Trout's term, starting in 2008. (Am. Compl. ¶ 131). In order to be considered timely, the alleged violation must be "occasioned by continual unlawful acts, not continual ill effects from an original violation." *Williams v. City of Trenton*, Civ. No. 11-6352, 2013 WL 3043603, at *4 (D.N.J. June 17, 2013) (quoting *Mata v. Anderson*, 635 F.3d 1250 (10th Cir. 2011)). Here, Plaintiffs have not alleged any timely acts related to the Trust Fund since Plaintiffs took office in 2008 and were purportedly denied access to the Fund—which is beyond the limitations period. Defendants' alleged continuing failure to reverse their decision about access to the Trust Fund does not make the act timely. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) ("[T]he Township's refusal to remove the [municipal] lien [is not] an affirmative act of a continuing violation."); *Talbert v. Judiciary of N.J.*, 420 F. App'x 140, 142 (3d Cir. 2011) (finding that continuing failure to reassign plaintiff after allegedly retaliatory transfer does not make retaliation timely); *Greer v. Diguglielmo*, 348 F. App'x 702, 704 (3d Cir. 2009) ("[A]ny alleged ongoing failure of prison officials to correct its course following the initial decision to deduct from Greer's prison account does not constitute a continuing violation.").

Even accepting the facts in the Amended Complaint as true, none of the purportedly retaliatory conduct—alone or in combination—is actionable as a matter of law. Consequently, Plaintiffs have failed to plead a constitutional violation within the limitations period.  To be clear, the Court does not reach the issue of whether Defendants' conduct is too trivial for Plaintiffs to succeed. That question is beyond the Court's review on a motion to dismiss.  Rather than pass on the merits of whether Defendants' conduct was wrongful, the Court is required to follow the legal rule in this Circuit that an alleged act of retaliation for a plaintiff's exercise of her First Amendment rights does not violate the constitution if it consists solely of another's speech, absent allegations of threats or coercion. Similarly, where the time limit for a plaintiff to file a complaint has long since passed, the Court is obligated to dismiss an action if it is clear that the plaintiff has failed to meet the deadline.

### (3) Whether Plaintiffs' Speech Was On A Matter Of Public Concern

Separately and independently, Defendants argue that all of Plaintiffs' First Amendment claims fail because Plaintiffs have not pled any facts to support an inference that Plaintiffs' speech was on a "matter of public concern."

A lawsuit by a public employee is not protected speech—and cannot form the basis of a First Amendment retaliation claim—unless it relates to a matter of "public concern." *See Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2493 (2011). Accordingly, if a public employee did not "sp[eak] as a citizen on a matter of public concern . . . [then] the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal citations omitted). Plaintiffs Trout and Russo pled that they sued the County during their public employment, and that Defendants retaliated against each of the Plaintiffs because of this lawsuit. (Am. Compl. ¶ 20; Pls.' Opp'n

Br. 25).  Trout brought NJ LAD and CEPA claims for discrimination based on gender and Russo brought an employment discrimination claim. (*Id.*). But they did not assert any facts surrounding these claims; nor did they allege that the lawsuits involved a matter of public concern; nor did they plead facts upon which the Court could possibly infer a matter of public concern.

Plaintiffs' only argument in response is that "[m]atters of public concern can include discrimination complaints." But to meet Plaintiffs' obligation to allege enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element, it is insufficient to merely plead that "Plaintiffs brought a discrimination claim."  This Court has given the Plaintiffs numerous chances to file a factually sufficient set of pleadings, and they have not done so with respect to this cause of action and others. The absence of a better articulated set of factual allegations under these circumstances means that one does not exist. The Court cannot infer—solely from Plaintiffs' employment discrimination lawsuits and without any underlying factual averments—that their lawsuits related to a matter of public concern. *Campbell v. W. Pittston Borough*, 498 F. App'x 186, 189 (3d Cir. 2012) (finding prior age discrimination lawsuit by public employee, without more, did not constitute speech on a matter of public concern). Because "there is nothing in [plaintiff's] Amended Complaint alleging that her complaints were made with any larger social purpose, Plaintiff has failed to plead a matter of public concern and her First Amendment retaliation claim fails." *Rearick v. Spanier*, Civ. No. 11-624, 2012 WL 1514916, at *7 (M.D. Pa. Apr. 30, 2012) *aff'd*, 523 F. App'x 198 (3d Cir. 2013); *see Jackson v. Dallas Sch. Dist.*, 954 F. Supp. 2d 304, 312 (M.D. Pa. 2013) ("Plaintiff's complaint contains conclusory allegations that the speech is 'constitutionally protected' and that it 'implicated a matter of public concern' . . . These averments are merely legal conclusions which do not have a presumption of truth, and they can be disregarded.").

**(b) Conspiracy Claim**

Plaintiffs next attempt to revive all of their untimely claims on the theory that acts undertaken as part of an illegal conspiracy are actionable so long as the conspiracy continues. They argue that "plaintiffs filed the complaint within two years of the final overt act by these defendants. This overt act should make all previous conspiratorial conduct timely under the law." (Pls.' Opp'n Br. 41-42).

In rejecting this argument—that the limitations period begins to run from the *last* overt act by a conspiracy—the Third Circuit has held that such a rule would "invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period." *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1984).  Instead, "[f]or each act causing injury, a claimant must seek redress within the prescribed limitations period. . . In the civil case, actual injury is the focal point, not the illegal agreement per se, . . ." *Id.* at 217.  To be timely, a plaintiff must "allege[] that the defendants performed injurious acts in furtherance of the conspiracy within the limitations period" and may only "recover damages for the acts that occurred within the limitations period." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106 (3d Cir. 2010) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).  Accordingly, the Court examines only the timely alleged conduct.

To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983). Not all illegal conspiracies are actionable: section 1985 "was not

22

intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights

of others,' or to be a 'general federal tort law.'" *Faber v. City of Paterson*, 440 F.3d 131, 135 (3d

Cir. 2006) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)). Rather, only

"invidious" conspiracies are actionable under § 1985(3). This includes conspiracies which

discriminate on the basis of race, gender, and disability, *Lake v. Arnold*, 112 F.3d 682, 686-88

(3d Cir. 1997), but not political affiliation, *Farber*, 440 F.3d at 138. "[A] plaintiff must allege

both that the conspiracy was motivated by discriminatory animus against an identifiable class

and that the discrimination against the identifiable class was invidious." *Farber v. City of

Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).  Moreover, the complaint must specifically allege

"that a discriminatory animus be 'behind' the conspirators' actions. The conspiracy must be

directed at the plaintiff because he belongs to a given class." *Hauptmann v. Wilentz*, 570 F. Supp.

351, 386 (D.N.J. 1983).  Thus, to allege a conspiracy against women actionable under § 1985(3),

a plaintiff must allege a conspiracy with "a purpose that focuses upon women *by reason of their

sex*."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

        Plaintiffs do not argue that the purported conspiracy was motivated by an invidious

discriminatory animus against an identifiable class.  In response to this Court's Order that

Plaintiffs' state a specific "federal constitutional rights violation . . . [and] the asserted factual

grounds," (Docket No. 54), Plaintiffs explicitly stated that their § 1985(3) claim was based on a

conspiracy motivated to retaliate against Plaintiffs for their previous lawsuits, not gender, race,

or disability discrimination:   "Conspiracy to commit class-based violations of plaintiffs' equal

protection rights as follows: 1. *Retaliating against Trout for appointing Russo and Falat* in

violation of her equal protection rights under the 14th Amendment. 2. *Retaliating against Trout

and Russo for their prior lawsuits* in violation of their free speech rights under the 1st

Amendment." [4]  (Docket No. 57, at 3 (emphasis added)).  But a conspiracy that does not involve class-based discrimination regarding gender, race, or disability, but is instead motivated to retaliate against individuals for bringing a civil lawsuit, is not actionable under § 1985(3). *See Slater v. Susquehanna Cnty.*, 465 F. App'x 132, 136 (3d Cir. 2012) (affirming dismissal where plaintiff "failed to allege that the defendants conspired to retaliate against her because of her gender" rather than her "whistle-blowing activities"). Thus, the Court will "dismiss[] [plaintiff's] § 1985(3) conspiracy claim, as there are no allegations that the alleged conspiracy was motivated by a *class-based*, invidiously discriminatory animus." *Faylor v. Szupper*, 411 F. App'x 525, 530 (3d Cir. 2011) (internal quotation marks omitted); *Bond v. Horne*, 553 F. App'x 219, 224 (3d Cir. 2014) (same).

Moreover, none of the timely acts alleged—Melick's letter to the Governor stating that Plaintiff Trout conducted herself "in a manner that challenged the public's trust"; Mennen's call for an administrative review; or unnamed individuals' "derogatory remarks and comments about Plaintiffs" that purportedly revealed personal matters like family circumstances and insurance programs—allege conduct that targets women by reason of their sex. Rather, as Plaintiffs plead in their Complaint, the purported conspiracy targeted specific individuals—one woman and two men—as retaliation for filing lawsuits against the County. (Am. Compl. ¶ 28) ("It was the understanding and belief of Plaintiff Trout that these actions and the actions of the Defendants were in retaliation for the Plaintiffs Trout and Russo for previously filing lawsuits against

---

[4] This Court ordered that Plaintiffs state the specific "federal constitutional rights violation . . . [and] the asserted factual grounds," (Docket No. 54). Nowhere in Plaintiffs' response did they assert a gender motivated conspiracy in violation of § 1985, nor did Plaintiffs assert this claim in their opposition briefing, (Pls.' Opp'n Br. 35-37). Any claim based on a conspiracy motivated by gender is deemed abandoned based on Plaintiffs' failure to assert, legally support, or argue it.

Hunterdon County."). There are insufficient facts in the Complaint to plausibly infer that these acts were directed to women as a class. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) (holding that an alleged conspiracy to deprive women of family planning services did not state an actionable conspiracy "directed specifically at women as a class" rather than the subclass of individuals supporting such services); *Moffett v. Bryant*, 751 F.3d 323, 326 (5th Cir. 2014) (affirming dismissal of § 1985 gender discrimination claim because the alleged "individual bias based upon a personal social relationship [is] a far cry from class-based discriminatory animus"); *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) ("[Plaintiffs] have failed to establish that the defendants' actions were directed at [plaintiff] because she was a woman, and the court properly dismissed the § 1985 claim.").

Separately and independently, the Court finds that the allegations in the Amended Complaint fall short of alleging an illegal agreement between two or more persons, as necessary to sustain a § 1985 or § 1983 conspiracy claim. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. . . [The allegations] must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

Here, Plaintiffs allege: "The Hunterdon County Freeholders and the Hunterdon County Counsel, in their individual and representative capacities, conspired with the other Defendants, in their individual and representative capacities, to harass, discriminate and/or retaliate against Plaintiffs Trout and Russo for exercising their right under the State and Federal Statutes and

Civil Rights laws." (Am. Compl. ¶ 41). But as for factual allegations, Plaintiffs rely solely on "communications" between the Defendants: "Upon information and belief, Defendants Rowe, DeFillippis [sic], DeSapio, the Defendant Freeholders, Yard, Simon, John Does l-20 and ABC Corporations 1-20 had numerous conversations concerning Plaintiffs and her appointments in the Hunterdon County Sheriff's Office." (Am. Compl. ¶ 61). "[F]ollowing *Twombly* and *Iqbal*, [pleading], in the conspiracy context, require[s] enough factual matter (taken as true) to suggest that an agreement was made, in other words, plausible grounds to infer an agreement." *Great W. Mining*, 615 F.3d at 178 (refusing to consider conclusory allegation that there was "an agreement"). But collectively alleging that all twelve Defendants had "communications" is insufficient to plead facts from which an actual agreement can be inferred between any of the Defendants. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("[C]ommunications between competitors do not permit an inference of an agreement."). Plaintiffs fail to connect any action by any individual Defendant to any other specific individual Defendant. These bare and sweeping generalizations do not satisfy the notice requirement of informing each individual defendant of the factual basis of the acts charged against them. *See Great W. Mining*, 615 F.3d at 178-79; *see also Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) ("As the linchpin for conspiracy is agreement, . . . concerted action, without more, cannot suffice to state a conspiracy claim."); *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) ("The rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").

**(c) Fourth Amendment Malicious Prosecution Claim**

Plaintiffs have asserted a malicious prosecution claim under the Fourth Amendment, which requires Plaintiffs plead "that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).

1. Effect of Grand Jury Indictments Upon Probable Cause

Defendants contend that Plaintiffs have failed to allege a lack of probable cause sufficient to overcome the effect of the grand jury's indictment of Plaintiffs. (Br. of Defs.' Rowe & DeFilippis 51-52, Docket No. 63-3). An essential element of Plaintiffs' claim is a lack of probable cause. *Wright v. City of Phila.*, 409 F.3d 595, 604 (3d Cir. 2005). Thus, the "existence of probable cause is an absolute defense to a malicious prosecution claim brought either under § 1983 or pursuant to New Jersey law." *Moore v. Carteret Police Dept.*, 254 F. App'x 140, 142 (3d Cir. 2007). Even where the indictment is later dismissed, a "grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, . . ." *Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 363 (3d Cir. 2003) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)). "[T]his presumption [of grand jury regularity] will only be overcome by evidence that the presentment was procured by fraud, perjury or other corrupt means." *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013). "At the pleading stage, 'this prima facie evidence may be rebutted by allegations that the presentment was procured by fraud, perjury or other corrupt means.'" *Palma v. Atl. Cnty.*, 53 F. Supp. 2d 743, 756

(D.N.J. 1999) (quoting *Rose*, 871 F.2d at 353 (holding that, absent allegations of fraud in procuring the indictment, "we agree with the district court that the plaintiffs' allegations are insufficient to survive dismissal")).

Here, "all three Plaintiffs were indicted on a total of 43 criminal counts in or around March of 2010." (Am. Compl. ¶ 187). Nothing in the Amended Complaint plausibly avers that the indictments against them were procured by "fraud, perjury, or other corrupt means." At most, Plaintiffs plead that Defendants had unauthorized access to information. (Am. Compl ¶ 150(j) ("The 'false swearing' indictment was based in part upon an e-mail illegally taken from Russo's computer and provided by representatives of defendant The County of Hunterdon to the Hunterdon County Prosecutor's Office."); Am. Compl. ¶ 86 ("Defendant Rowe apparently did not believe it was inappropriate to quote the illegally obtained e-mail in his report . . ."); Pls.' Opp'n Br. 8 (arguing that Defendants impermissibly demanded Sheriff's Office employment records)). Nor does the Amended Complaint contain any allegations that there was perjured testimony before the grand jury; that Defendants made false statements to the prosecutors; that the allegation of abnormal hiring practices was untrue; that the records Defendants allegedly provided to prosecutors were fraudulent; or that witnesses withheld or misrepresented evidence.[5] Instead, they argue only that, "[a]lthough a grand jury indictment is prima facie evidence of probable cause to prosecute, when the facts underlying it are disputed, the issue must be resolved by the jury." (Pls.' Opp'n Br. 14). This is not what *Iqbal* and *Twombly* require. Plaintiffs cannot survive a motion to dismiss simply by saying that the facts underlying a prior criminal indictment are disputed, as counsel well knows. This is exactly the type of general statement that

---

[5] Nor does the exhibit Plaintiffs relied upon allege fraud, perjury, or corrupt means, or the absence of probable cause.

first led Judge Chesler to demand that Plaintiffs articulate precisely their claims, and then this Court to demand a clear statement of the bases of the various causes of action.

Under the *Iqbal* pleading standard, the mere legal conclusion that "there was a lack of probable cause for the criminal prosecution," (Am. Compl. ¶ 182(q)), is insufficient to plead malicious prosecution.  Plaintiffs' counsel is an experienced and agile practitioner; the persistent refusal to articulate a pleading that meets the *Iqbal* standard, despite numerous opportunities to do so, means that there is no more that can be said to meet the factual and legal requirements of the cause of action for malicious prosecution.[6]  Instead, Plaintiffs—who were indicted by a grand jury—must plead facts related to misconduct before the grand jury to raise a reasonable expectation that discovery will reveal evidence of the necessary element. In this case, repeated failure to plead "fraud, perjury, or other corrupt means" is grounds for dismissal. *Rose*, 871 F.2d at 353; *see Leone v. Twp. of Deptford*, 616 F. Supp. 2d 527, 533 (D.N.J. 2009) ("plaintiffs have not alleged that the presentment to the grand jury of the evidence to support the criminal indictments relating to the excessive force incident was corrupt. Thus, by failing to properly allege a necessary element of a Fourth Amendment malicious prosecution claim, plaintiffs have failed to state such a claim, and it will be dismissed."); *Lora-Rivera v. Drug Enforcement Admin. Dep't of Justice*, 800 F. Supp. 1049, 1052 (D.P.R. 1992) (granting motion to dismiss because grand jury indicted defendants and plaintiffs failed to plead fraud); *Zargari v. United States*, Civ. No.13-23806, 2014 WL 1669968, at *5-6 (S.D. Fla. Apr. 28, 2014) (dismissing complaint where plaintiff failed to "sufficiently allege [defendants] committed fraud, perjury, or otherwise acted improperly in the acquisition of [plaintiff's] indictment."); *cf. Mobilio v. Dep't of Law & Pub.*

---

[6] If counsel chooses to proceed with this action in state court upon remand, one hopes that legal analysis will replace these "naked assertions devoid of further factual enhancement."

*Safety of N.J.*, Civ. No. 07-3945, 2008 WL 2704826, at *4 (D.N.J. July 7, 2008) (finding allegation in the complaint that defendant "fabricated and suppressed evidence in order to obtain an arrest warrant" was sufficient to state "fraud, perjury, or other corrupt means" and survive a motion to dismiss). Plaintiffs do not even plead that the evidence offered to the grand jury was untrue, much less even attempt to aver any other facts sufficient to suggest a plausible basis to believe that discovery will develop a cognizable cause of action for malicious prosecution. Plaintiffs fail to state facts in the Amended Complaint sufficient to state a malicious prosecution claim based on the Fourth Amendment.

### 2. Initiation of Proceedings

Raising a separate challenge, Defendants assert that Plaintiffs' malicious prosecution claim should also be dismissed because Plaintiffs purportedly failed to plead that Defendants "initiated the criminal proceeding" against Plaintiffs.

A malicious prosecution claim requires that a defendant initiate a criminal proceeding, *i.e.*, "proof that defendant took 'some active part in instigating or encouraging the prosecution' or 'advising or assisting another person to begin the proceeding, or by ratifying it when it is begun in defendant's behalf, or by taking any active part in directing or aiding the conduct of the case.'" *Epperson v. Wal-Mart Stores, Inc.*, 373 N.J. Super. 522, 531 (App. Div. 2004) (quoting Prosser and Keeton, *The Law of Torts* § 119 at 872 (5th ed., 1984)) (internal alterations omitted)). On the other hand, an allegation that a defendant merely provided information to prosecutors is insufficient to plead the "initiated criminal proceedings" element. *See Campbell v. Yellow Cab Co.*, 137 F.2d 918, 921 (3d Cir. 1943) (finding that identifying plaintiff as the perpetrator of a crime to police and testifying at trial does not constitute initiating a criminal

proceeding). Thus, providing information regarding possible criminal activity—which is insufficient for a claim of malicious prosecution—is distinguishable from actively encouraging prosecution or misleading prosecutors, which may state the "initiated" element. *See Griffiths v. CIGNA Corp.*, 988 F.2d 457, 464 (3d Cir. 1993) ("[Restatement of Torts § 653] Comment g distinguishes between situations in which a private individual files a complaint or demands a prosecution and those in which he merely provides information to the police. . . in the latter case a private individual who does not knowingly provide false information is not responsible for the institution of the proceedings . . . ."). Accordingly, "[a] person who tells law enforcement authorities that he or she thinks that a crime has been committed and does no more, does not thereby put him- or herself at risk of liability for malicious prosecution." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000).

Plaintiffs rely solely on these specific facts pled in the Amended Complaint: "[o]ne or more of the defendants also began leaking Grand Jury information to a local newspaper"; "defendant Rowe issued the initial subpoena on Falat to give testimony before the Grand Jury"; the "indictment was based in part upon an e-mail illegally taken from Russo's computer and provided by representatives of defendant Hunterdon County to the HCPO"; and "[D]efendants demanded that Trout provide resumes, organizational charts and job descriptions from her selection of undersheriffs, investigators and officers."[7] (Pls.' Opp'n Br. 8-9). Corresponding with—or providing documents to—prosecutors, does not state a claim for malicious prosecution. *See Wiltz v. County of Middlesex Prosecutor*, 249 F. App'x 944, 950, (3d Cir. 2007) (affirming dismissal where allegation that defendant had submitted invoices to prosecutors was

---

[7] Plaintiffs allege that all twelve Defendants initiated the proceedings "both individually and collectively" against all Plaintiffs. (Am. Compl. ¶ 180).

"too minor and too removed from the prosecution to satisfy the 'instituted proceedings' prong.'");
*Miller v. City of Boston*, 297 F. Supp. 2d 361, 367 (D. Mass. 2003) (granting 12(b)(6) motion
because defendant, by identifying the plaintiff as the perpetrator of a crime, did not actively
participate as a matter of law); *see also Brenner v. Twp. of Moorestown*, Civ. No. 09-219, 2011
WL 1882394, at *16 (D.N.J. May 17, 2011) (finding that "calling 9–1–1 to report a plaintiff's
behavior" was insufficient as a matter of law because defendant's "involvement in Plaintiff's
prosecution was relatively inconsequential"). Nor is there any allegation in the Amended
Complaint that any Defendant "knowingly provided false information to the prosecutor or
otherwise interfered with the prosecutor's informed discretion." *White v. Brommer*, 747 F. Supp.
2d 447, 459 (E.D. Pa. 2010).

Plaintiffs' contention—that unnamed Defendants "disclosed, or were involved in the
disclosure of confidential Grand Jury information and/or confidential investigations by the
Hunterdon County Prosecutor's Office," (Am. Compl. ¶ 71), and that all twelve Defendants
attempted to "involve [prosecutors] in an investigation"—are conclusory. *See Wiltz*, 249 F.
App'x at 950 ("allegations that the private defendants urged PARSA to prosecute appellant . . .
were wholly conclusory"). Moreover, it does not set forth facts indicating that Defendants
actively encouraged or instigated the Plaintiffs' indictment, nor that they misled prosecutors into
indicting Plaintiffs. Finally, issuing a grand jury subpoena was part of an investigatory process,
not the commencement of proceedings. *See Gallucci v. Phillips & Jacobs Inc.*, 13 Pa. D. & C.4th
413, 426 (Com. Pl. 1991) ("The grand jury subpoena was merely an investigative tool which
permitted the FBI to gather information to determine the necessity for further inquiry in this
matter. [It] in no way instituted criminal proceedings . . . and does not qualify as formal
prosecutorial action designed to obtain a criminal conviction."); *Rosen v. Am. Bank of Rolla*, 426

Pa. Super. 376, 382 (1993) ("The issuance or service of a subpoena does not constitute the initiation or commencement of a civil proceeding."). Defendants' participation in an investigation is insufficient involvement with the proceedings to allege "some active part in instigating or encouraging the prosecution." *See Pitt v. D.C.*, 491 F.3d 494, 505 (D.C. Cir. 2007) (finding defendant's act of taking witness statements and investigating an alibi do not rise to the level of instituting proceedings as a matter of law). As a separate and independent ground for dismissal, the Amended Complaint fails to aver facts sufficient to plausibly show that Defendants herein "initiated the criminal proceeding."[8]

Because Plaintiffs had prior notice of the deficiencies in their complaint from the first round of motions to dismiss; had opportunities to clarify these deficiencies through supplemental submissions (*see* Docket No. 57); and were previously permitted an amendment to their complaint; the Court dismisses Plaintiffs' federal claims against the moving Defendants with prejudice.

---

[8] The Court defers to the New Jersey courts regarding the interpretation of Plaintiffs' state malicious prosecution claim.  Accordingly, the Court does not address whether Plaintiffs' state law claim is barred for the reasons articulated above under federal law. For similar reasons, the Court remands Defendants' intertwined motion to compel production of grand jury materials, which may be relevant in defending the malicious prosecution claim if the state court determines that the claim survives.

 **(d) State Law Claims**[9]

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *Gibbs*, 383 U.S. at 726; *Growth Horizons*, 983 F.2d at 1284-85.

In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at the motion to dismiss stage, and declines to exercise supplemental jurisdiction

---

[9] Although entry of default has been filed against Defendant Simon, and Defendant DeSapio did not renew his motion to dismiss, because the Plaintiffs' federal claims are facially insufficient, the Court finds good cause to set aside entry of default against Simon and dismisses the federal claims as against Simon and DeSapio. *See Feliz v. Kintock Group*, 297 F. App'x 131, 137 (3d Cir. 2008); *U.S. ex rel. Dattola v. Nat'l Treasury Emp. Union*, 86 F.R.D. 496, 500 n.11 (W.D. Pa. 1980).

over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3).  The Court remands all state

law claims to New Jersey Superior Court, Hudson County, Law Division.  *See Borough of W.*

*Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("While § 1367(c) does not specify what

disposition the district court is to make of state claims it decides not to hear, . . . we believe that

in a case that has been removed from a state court, a remand to that court is a viable alternative

to a dismissal without prejudice.") (internal citations omitted).


## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' federal claims are dismissed with prejudice and

Plaintiffs' state law claims are remanded to New Jersey Superior Court. An appropriate Order

follows.

**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**